*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0242P (6th Cir.)
File Name: 04a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DOREEN RICCO,
    *Plaintiff-Appellant,*

    *v.*

JOHN E. POTTER, Postmaster
General, et al.,
    *Defendants-Appellees.*

No. 03-3294

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00496—Donald C. Nugent, District Judge.

Argued: April 23, 2004

Decided and Filed: July 27, 2004

Before: MERRITT and MOORE, Circuit Judges;
DUGGAN, District Judge.*

_____

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

_____

### COUNSEL

**ARGUED:** Jonathan T. Hyman, REMINGER & REMINGER CO., Cleveland, Ohio, for Appellant. Annette G. Butler, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellees. **ON BRIEF:** Jonathan T. Hyman, Richard C. Haber, REMINGER & REMINGER CO., Cleveland, Ohio, for Appellant. Annette G. Butler, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellees.

MOORE, J., delivered the opinion of the court, in which DUGGAN, D. J., joined. MERRITT, J. (pp. 14-15), delivered a separate concurring opinion.

_____

### OPINION

_____

KAREN NELSON MOORE, Circuit Judge. This appeal from the dismissal of a claim under the Family and Medical Leave Act of 1993 ("FMLA") raises an important issue of statutory construction. Specifically, this appeal requires us to interpret the phrase "hours of service" as it is used in the FMLA. We hold that make-whole relief awarded to an unlawfully terminated employee may include credit towards the hours-of-service requirement contained in the FMLA's definition of "eligible employee."

Plaintiff-Appellant, Doreen Ricco ("Ricco"), appeals the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) of her claim pursuant to the FMLA against her former employer, Defendant-Appellee, John E. Potter, Postmaster General ("Postmaster"). On appeal, Ricco argues that the district court erred by adopting the reasoning of *Plumley v. Southern Container, Inc.*, 303 F.3d 364, 367

(1st Cir. 2002), in which the First Circuit held that the hours-of-service requirement contained in the FMLA's definition of "eligible employee" includes only hours during which an employee performed actual work, not hours for which an employee was compensated pursuant to an arbitration award. Ricco further argues on appeal that the district court did not adequately balance the competing interests of employers and employees and created an incentive for employers unlawfully to terminate employees to prevent employees from satisfying the hours-of-service requirement.

For the following reasons, we **REVERSE** the district court's judgment granting the Postmaster's motion to dismiss under Rule 12(b)(6) and **REMAND** this case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

In July 1993, the United States Postal Service ("Postal Service") hired Ricco to work at its general mail facility in Cleveland, Ohio.[1] In December 1997, the Postal Service issued Ricco "a notice of removal, effectively terminating her employment." Joint Appendix ("J.A.") at 26 (Am. Compl. ¶ 7). Ricco timely grieved her December 1997 termination and ultimately proceeded to an arbitration hearing on January 19, 1999. In a February 8, 1999 award, the arbitrator ordered that Ricco's termination be converted to a thirty-work-day suspension and that Ricco "be reinstated subject to passing a fitness-for-duty examination and be made whole." J.A. at 26 (Am. Compl. ¶¶ 9, 10). Subsequently, Ricco "passed the fitness-for[-]duty examination and was returned to work with

---

[1] Because this is an appeal from the district court's judgment granting the Postmaster's motion to dismiss under Rule 12(b)(6), we recite the facts as they are recounted in Ricco's amended complaint.

full credit for years of service for seniority and pension purposes." J.A. at 26-27 (Am. Compl. ¶ 10).

After Ricco returned to work, from May through July 1999, she suffered from depression and migraines after the death of her husband, and consequently she required intermittent leaves of absence. Due to this serious health condition, Ricco requested FMLA leave in early May 1999. According to Ricco, the Postal Service denied her request for FMLA leave because it concluded that she had not met the hours-of-service requirement.[2] Ricco alleges that she "had not 'worked' 1250 hours in the preceding 12 months solely because she had been unlawfully terminated in December 1997 and in violation of the Collective Bargaining Agreement."[3] J.A. at 27 (Am. Compl. ¶ 15). Ricco further alleges that the Postal Service has previously recognized "that '[w]hen an[] employee is awarded back pay, accompanied by equitable remedies (i.e. full back pay with seniority and benefits, or a 'make whole' remedy), the hours the employee would have worked if not for the action which resulted in the back pay period, are counted as work hours for the 1250 work hour eligibility requirement under the Family Medical Leave Act (FMLA).'" J.A. at 29 (Am. Compl. ¶ 27).

On October 15, 1999, the Postal Service issued Ricco another notice of removal "due to a failure to maintain a regular work schedule." J.A. at 27 (Am. Compl. ¶ 14). Ricco

---

[2] To be an "eligible employee" under the Family and Medical Leave Act of 1993 ("FMLA") an employee must have worked for her employer for at least twelve months and must have completed "at least 1,250 hours of service with such employer during the pervious 12-month period." 29 U.S.C. § 2611(2)(A).

[3] In her amended complaint, Ricco avers that her December 1997 termination was "unlawful." Because this is an appeal from the district court's judgment granting the Postmaster's motion to dismiss under Rule 12(b)(6), we must assume that the arbitrator did, in fact, determine that Ricco's December 1997 termination was unlawful.

timely grieved her October 1999 termination and proceeded to another arbitration hearing. In a November 19, 2001 award, the arbitrator affirmed Ricco's dismissal "on the basis that [Ricco] was absent from work [and further] stated that 'this is not the proper forum to litigate any alleged violations of the FMLA' and therefore refused to consider whether the FMLA had been violated." J.A. at 28 (Am. Compl. ¶ 19). Thereafter, Ricco commenced this action in federal court.

## B. Procedural Background and Jurisdiction

On March 14, 2002, Ricco filed a two-count complaint in the district court alleging that the Postmaster terminated her in violation of the FMLA and Ohio public policy. On September 6, 2002, Ricco filed a motion to dismiss Count II of her complaint, which asserted a claim based upon Ohio public policy, because that claim had been foreclosed by Ohio Supreme Court precedent. At a status conference on October 2, 2002, the Postmaster raised the potential applicability of the *Plumley* decision, and the parties agreed that Ricco would file an amended complaint supplementing her factual allegations and that the Postmaster would then file a motion to dismiss. Ricco filed her first amended complaint on October 17, 2002, and thereafter the Postmaster filed his motion to dismiss on October 21, 2002. The district court granted the Postmaster's motion to dismiss on February 7, 2003. Ricco filed a timely notice of appeal.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331, as Ricco's FMLA claim presented a federal question. This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## II. ANALYSIS

## A. Standard of Review and Statute of Limitations

We review de novo a district court's dismissal under Rule 12(b)(6). *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d

444, 451 (6th Cir. 2003). "In deciding whether to grant a Rule 12(b)(6) motion, we 'must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations [of the plaintiff] as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'" *Id.* at 451-52 (quoting *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)). Moreover, a Rule 12(b)(6) "motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 425 (quoting *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994) (quotation omitted)). The Postmaster points out that he timely raised in his answer as an affirmative defense the expiration of the FMLA's two-year statute of limitations, but that the district court did not rule upon this issue in its opinion. The FMLA provides:

(1) In general

Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.

(2) Willful violation

In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

29 U.S.C. § 2617(c). The Postal Service terminated Ricco, allegedly in violation of the FMLA, on October 15, 1999, and Ricco filed her complaint approximately two and one-half years later. Therefore, Ricco's FMLA claim is time-barred unless she proves that the Postmaster's violation was willful.

Ricco, in both her initial complaint and her first amended complaint, averred that the Postmaster and the Postal Service acted negligently, willfully, and maliciously when they violated her rights under the FMLA. An employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements; therefore, the determination of willfulness involves a factual question. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125-130 (1985) (defining the standard for a willful violation of the Age Discrimination in Employment Act); *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003); *see also Williams v. Schuller Int'l, Inc.*, No. 00-3614, 2002 WL 193929, at *3 (6th Cir. Feb. 5, 2002) (applying *Thurston*'s standard of willfulness to claims brought under the FMLA). Because a plaintiff's factual allegations must be taken as true for purposes of deciding a Rule 12(b)(6) motion to dismiss, a plaintiff may withstand such a motion merely by having alleged that the FMLA violation was willful. *See Caucci v. Prison Health Servs., Inc.*, 153 F. Supp. 2d 605, 608-09 (E.D. Pa. 2001).

## B. Statutory Interpretation

On appeal, Ricco contends that the district court erred by adopting the reasoning in *Plumley*, arguing that the First Circuit erroneously concluded that the hours-of-service requirement contained in the FMLA's definition of "eligible employee" means only hours that an employee performed actual work, not hours for which an employee was compensated pursuant to an arbitration award. In *Plumley*, the First Circuit looked, as directed by the FMLA, to the Fair Labor Standards Act of 1938 ("FLSA") for guidance regarding the proper interpretation of the hours-of-service requirement. *Plumley*, 303 F.3d at 369-72.

Ricco points out, however, that neither the FMLA nor the FLSA define the term "hours of service" and argues that neither the FLSA nor its applicable regulations support the

interpretation of the hours-of-service requirement adopted in *Plumley*. Ricco argues that the FLSA merely defines "regular rate," and that although the definition of "regular rate" excludes payment for occasional periods where no work is performed due to certain causes, unlawful termination should not be so excluded. Because the FMLA and FLSA do not define the term "hours of service," Ricco urges this court to define the term to include those hours that an employee is deemed to have worked pursuant to a make-whole award issued by an arbitrator in order to effectuate the FMLA's purpose of "balanc[ing] the demands of the workplace with the needs of the family," and to discourage employers from unlawfully terminating employees to prevent them from meeting the hours-of-service requirement. Appellant's Br. at 17.

In response, the Postmaster argues that together the FMLA and the FLSA adequately define the term "hours of service." The Postmaster asserts that the legislative history of the FMLA, the pertinent provisions of the FLSA, and Supreme Court precedent interpreting the FLSA all indicate that the hours-of-service requirement does not include time for which an employee was paid but did not work or time spent on unpaid leave. The Postmaster further asserts that interpreting the term "hours of service" to include those hours that an employee is deemed to have worked pursuant to a make-whole award issued by an arbitrator would undermine the FMLA's purpose of allowing "employees to take *reasonable* leave . . . in a manner that accommodates the legitimate interests of the employer." Appellee's Br. at 12.

The FMLA entitles eligible employees to twelve weeks of unpaid leave during any twelve-month period for certain statutorily prescribed reasons. 29 U.S.C. § 2612(a)(1). The FMLA defines the term "eligible employee" as:

an employee who has been employed —

(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and

(ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A).[4] The FMLA does not define the term "hours of service"; however, it does specify: "For purposes of determining whether an employee meets the hours of service requirement specified in subparagraph (A)(ii), the legal standards established under section 207 of this title shall apply." *Id*. at (2)(C). The applicable regulations explain, "The determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA." 29 C.F.R. § 825.110.

Section 7 of the FLSA does not define the term "hours of service," but it does provide in its definition of "regular rate" standards for determining the rate at which employees must be compensated for engaging in overtime work.[5] FLSA, ch. 676, § 52 Stat 1060 (1938) (codified as 29 U.S.C. § 207) ("§ 207"). The FLSA specifies that an employee's "regular rate" of compensation does not include, among other things,

(2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, *or other similar cause*; reasonable payments for

---

[4]The determination of whether an employee meets the FMLA's eligibility requirements is made in reference to the date the employee commences his or her leave, not the day the employer takes an adverse action against the employee. *Butler v. Owens-Brockway Plastic Prods., Inc.*, 199 F.3d 314, 316 (6th Cir. 1999).

[5]Under the FLSA, an employee must be compensated for overtime work at a rate "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar *payments to an employee which are not made as compensation for his hours of employment*[.]

29 U.S.C. § 207(e) (emphases added). The applicable regulations explain:

This provision of section 7(e)(2) deals with the type of absences which are infrequent or sporadic or unpredictable. It has no relation to regular "absences" such as lunch periods nor to regularly scheduled days of rest. . . .

. . .

. . . The term "other similar cause" refers to payments made for periods of absence due to factors like holidays, vacations, sickness, and failure of the employer to provide work. Examples of "similar causes" are absences due to jury service, reporting to a draft board, attending a funeral of a family member, inability to reach the workplace because of weather conditions. Only absences of a nonroutine character which are infrequent or sporadic or unpredictable are included in the "other similar cause" category.

29 C.F.R. § 778.218(b), (d).

In *Plumley*, the First Circuit concluded that these statutes and regulations indicate that the hours-of-service requirement includes only hours that the employee actually worked, not hours for which an employee was compensated pursuant to an arbitration award. 303 F.3d at 370-73. No other circuit has addressed this issue.

It is true that neither the FMLA nor the FLSA defines the term "hours of service," but the FMLA specifies that an employee's "hours of service" are to be calculated according to the standards contained in § 207. Examination of § 207 leads to the conclusion that the only plausibly applicable standards are those contained in the definition of the term "regular rate." In response to public comment, the Department of Labor stated that the legislative history of the FMLA indicates that "the minimum hours of service requirement is meant to be construed in a manner consistent with the legal principles established for determining hours of work for payment of overtime compensation." Summary of Comments, 60 Fed. Reg. 2186 (January 6, 1995). It is also true, however, that § 207 limits additional unenumerated exclusions from the determination of an employee's "regular rate" to "other similar causes," and that time that an employee does not work due to vacation or illness is conceptually dissimilar from time that an employee does not work due to unlawful termination.

We conclude that time that an employee would have worked but for her unlawful termination is not an "other similar cause" within the meaning of § 207. Such hours are different from occasional hours of absence due to vacation, holiday, illness, and the employer's failure to provide work, etc., in that they are hours that the employee wanted to work but was *unlawfully prevented* by the employer from working. Section 207 does not clearly prevent such hours from counting, and the purpose of the FMLA's hours-of-service requirement is properly served by including these hours. In such cases, the employer's unlawful conduct has prevented the employee from satisfying the hours-of-service requirement. Moreover, denying employees credit towards the hours-of-service requirement for hours that they would have worked, but for their unlawful termination, rewards employers for their unlawful conduct. We conclude that neither the FMLA nor the FLSA addresses directly the situation in this case involving hours that an employee would

have worked but for her unlawful prior termination by her employer.

We note that back-pay awards often include payment for overtime work that an employee would have performed but for her employer's violation of employment laws. *See, e.g., United States v. City of Warren*, 138 F.3d 1083, 1097 (6th Cir. 1998) (upholding an award of lost overtime granted to prevailing plaintiffs in a Title VII case); *EEOC v. Ky. State Police Dep't*, 80 F.3d 1086, 1100 (6th Cir.) (upholding an award of lost overtime payments granted to prevailing plaintiffs in an Age Discrimination in Employment Act case), *cert. denied*, 519 U.S. 963 (1996). Such back-pay awards involve two calculations — (1) determining the number of overtime hours the employee likely would have worked but for her unlawful termination; and (2) determining the employee's likely rate of overtime pay. While the calculations contained in § 207 are necessary to determine the employee's likely rate of overtime pay, they have nothing to do with the determination of how many hours the employee likely would have worked but for her unlawful termination. When calculating a back-pay award, the determination of how many hours the employee likely would have worked but for her unlawful termination is typically based upon the employee's work history. Similarly, when calculating the credit towards the hours-of-service requirement due as part of a make-whole award, the determination of how many hours the employee likely would have worked but for her unlawful termination should also be based upon her employment history.

The goal of a make-whole award is to put the employee in the same position that she would have been in had her employer not engaged in the unlawful conduct; this includes giving the employee credit towards the FMLA's hours-of-service requirement for hours that the employee would have worked but for her unlawful termination. The district court must determine in the first instance the number of hours that Ricco would have worked but for her unlawful termination in

order to ascertain Ricco's eligibility under the hours-of-service requirement for FMLA leave.

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order granting the Postmaster's motion to dismiss pursuant to Rule 12(b)(6) and **REMAND** this case for further proceedings consistent with this opinion.

_____

## CONCURRENCE

_____

MERRITT, Circuit Judge, concurring.  The defendant-employer in this case discharged plaintiff wrongfully, preventing her continued work, according to a now-final, arbitration award, and thereby prevented her from qualifying for benefits under the Family Medical Leave Act.  I concur in the Court's opinion and simply add the idea that a contrary decision would contravene fundamental general principles of restitution and equitable remedies of long standing by allowing the employer to profit from its own infringement of the plaintiff's right to the statutory benefits derived from her own labor.

The remedies provided by the Family Medical Leave Act and the Fair Labor Standard Act are make-whole, equitable remedies, as the Court's opinion suggests.  The Restatement of Restitution in its introductory note sets out the underlying principle:

The principles expressed in this Chapter represent not only a large body of contemporary, "positive' law but also a view of justice traceable to Roman law and beyond.  The central idea is the conjunction of unjust enrichment on the one side and loss of grievance on the other.  Rules of liability in restitution depend in part on the wrongful acquisition of gain and in part on harm or loss wrongfully imposed.  In some cases the fact that a person has acquired a gain by wrongdoing is the principal reason for requiring him to make restitution.

The first section of the Restatement then provides:

## § 1.  The General Principle:  Unjust Enrichment

A person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment.

American Law Institute, *Restatement of the Law 2d*, Tent. Draft 1, pp. 7-8 (April 5, 1983).  See also *Lightly v. Qouston*, 127 Eng. Rep. 774 (C.P. 1808) in which Lord Mansfield applied the restitution concept to the appropriation of the right of an employee of his labor, upholding an action in the form of assumpsit for work and labor wrongly prevented by the defendant.  See Palmer, *Law of Restitution* § 2.1, n. 5 (1978), discussing the *Lightly* case in a modern context.  This same fundamental principle of restitution should be applied in this case where the employer wrongfully prevented the labor of the employee thereby through its action denying the employee the benefit of family medical leave.  To leave the status quo in place would unjustly enrich the employer at the expense of the employee.