RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0154p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CARLA MUTCHLER,

        *Plaintiff-Appellant,*

    *v.*

  No. 06-3132

DUNLAP MEMORIAL HOSPITAL; KATHY LOEDE,
        *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 05-00883—James Gwin, District Judge.

Argued: March 15, 2007

Decided and Filed: May 2, 2007

Before: COLE, CLAY, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** David A. Van Gaasbeek, North Canton, Ohio, for Appellant. Karen Soehnlen McQueen, KRUGLIAK, WILKINS, GRIFFITHS & DOUGHERTY CO., L.P.A., Canton, Ohio, for Appellees. **ON BRIEF:** David A. Van Gaasbeek, North Canton, Ohio, for Appellant. Karen Soehnlen McQueen, KRUGLIAK, WILKINS, GRIFFITHS & DOUGHERTY CO., L.P.A., Canton, Ohio, for Appellees.

_____

## OPINION

_____

CLAY, Circuit Judge. Plaintiff, Carla Mutchler, appeals the district court's grant of summary judgment to Defendants, Dunlap Memorial Hospital and Kathy Loede, on her claim that Defendants violated the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq. Plaintiff's appeal rests on two claims: first, that she met the "hours of service" requirement for purposes of FMLA eligibility; and second, that Defendants should be equitably estopped from denying her eligibility. For the reasons that follow, we **AFFIRM**.

## BACKGROUND

Plaintiff began working as a registered nurse at Defendant Dunlap Memorial Hospital ("Defendant Hospital") in September 1997. On May 29, 2002, Plaintiff transferred into Defendant Hospital's so-called "Weekender Program." Through the Weekender Program, participating nurses work two twelve-hour shifts each weekend and one assigned holiday during the year. If the

participating nurse works the full forty-eight scheduled hours in a two week period, Defendant Hospital compensates that nurse for sixty-eight hours of work.[1]  Additionally, nurses participating in the Weekender Program qualify to receive full time benefits.

On April 24, 2004, Plaintiff requested medical leave to obtain treatment for severe bilateral carpel tunnel syndrome.  She sought leave between May 13, 2004 and June 7, 2004, her "expected return date," noting that surgery on her second wrist would occur in June or July.[2]  In a response dated May 4, 2004, Defendant Kathy Loede ("Defendant Loede"), the human resources manager at Defendant Hospital, granted Plaintiff's request for medical leave, finding her eligible for FMLA leave and calculating her entitlement "on the basis of . . . a "rolling" 12-month period measured backward from the date" leave begins.  (J.A. at 196)  At that time, Defendant Hospital did not typically verify the hours worked when processing FMLA-protected leave requests.  Rather, it apparently relied upon the requesting employee's certification that they had worked the requisite hours.

Plaintiff sustained open carpal tunnel release surgery on her left wrist on May 13, 2004.  On or about May 19, 2004, however, Defendant Loede discovered that Plaintiff had *not* worked the requisite 1,250 hours to qualify for FMLA-protected leave.  Rather, Defendant Hospital's payroll records revealed that Plaintiff had worked only 1,242.8 hours in the year preceding the leave.[3]  Accordingly, on May 21, 2004, Defendant Loede contacted Plaintiff to inform her that she fell short of the hours of service required for FMLA eligibility.  Defendant Loede told Plaintiff that Defendant Hospital would honor the FMLA leave through June 7, 2004, but that Plaintiff did not qualify for additional FMLA-protected leave and would receive only non-FMLA leave for any time not previously requested.  Nevertheless, on June 1, 2004, Plaintiff scheduled her second surgery for June 3, 2004.  Plaintiff's physician estimated that Plaintiff would be prepared to return to work July 5, 2004.[4]

Following her surgery on June 3, 2004, Plaintiff signed a "Request for Leave Not Subject to F.M.L.A." to cover the period from June 3, 2004 to July 5, 2004.  In a letter dated June 7, 2004, Defendant Loede informed Plaintiff that "[b]ecause this leave [requested June 3] is for a new health condition and for a new period of leave associated with that health condition, it has been processed in that manner."  (J.A. at 421-22; 507)  Defendant Hospital treated Plaintiff's second period of leave as not protected under the FMLA.  On June 8, 2004, when Plaintiff failed to return to work, Defendant Hospital assigned Ms. Kiko to Plaintiff's previous position in the Weekender Program.  Upon her return to work, Plaintiff found that her position in the Weekender Program had been given to Ms. Kiko, and that Defendants had scheduled Plaintiff to work weekdays.  Plaintiff protested the change and sought reassignment to the Weekender Program, but her efforts were to no avail.

---

[1]Throughout this opinion, we occasionally refer to the additional compensated hours as "Weekender Hours."

[2]It is unclear why Plaintiff did not simply request a longer period of leave.  Her medical records clearly indicate that, on April 8, 2004, Dr. Dulik informed her that "surgery would be done one at a time [an] est[imated] 6 weeks apart." (J.A. at 807)  Additionally, Plaintiff knew she would require approximately four weeks to recover from each surgery.

[3]The record reflects that Defendant Loede investigated Plaintiff's qualifying hours only after another employee, Tammi Kiko, expressed her interest in returning to the Weekender Program if a spot opened up.  Apparently, Ms. Kiko had previously worked in the Weekender Program and, during FMLA-protected maternity leave, had been reassigned to a weekday schedule.

[4]As the district court stated in its opinion, nothing in the record suggests that Plaintiff's second surgery could not wait until she had worked the additional hours needed to qualify for FMLA-protected leave.  Plaintiff avers that, after learning that she fell short of eligibility for FMLA leave, she "continued to observe the recommendations and advice of [her] medical physician and did not return to work." (J.A. at 183)  Yet, Plaintiff admitted in her deposition that the second surgery was not an emergency.

Plaintiff filed suit in the Wayne County, Ohio Court of Common Pleas, alleging violations of the FMLA. Defendants removed the suit to federal district court and, subsequently, filed a motion to dismiss. The district court denied Defendants' motion to dismiss. Following discovery, Defendants filed a motion for summary judgment, which the district court granted. The district court concluded that Plaintiff did not meet the definition of "eligible employee" under the FMLA. Additionally, the district court found that Plaintiff could not successfully invoke principles of equitable estoppel, either as set forth in the common law or in the FMLA's implementing regulation at 29 C.F.R. § 825.110(d). Plaintiff timely appealed.

## DISCUSSION

## I.     PLAINTIFF WAS NOT AN "ELIGIBLE EMPLOYEE" UNDER THE FMLA

### A.     Standard of Review

We review *de novo* a district court's grant of summary judgment. *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 597 (6th Cir. 2002). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, we must draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.     "Eligible Employee" under the FMLA

Plaintiff's eligibility ultimately turns on the meaning of "hours of service" as the phrase is used in the FMLA. Plaintiff does not dispute that she *actually worked* only 1,242.8 hours during the twelve months preceding her leave. Rather, Plaintiff argues that her "hours of service" include ten additional hours per week – hours not worked, but for which she received compensation under the Weekender Program. The district court concluded that "Defendants were justified in giving [Plaintiff] credit for the hours she actually worked, not the additional bonus hours she received for working on weekends" and that Plaintiff "was therefore not an eligible employee under the FMLA." (J.A. at 576) We agree with the district court and hold that the Weekender Hours do not constitute "hours of service" for purposes of FMLA eligibility.

To be "eligible" under the FMLA, an employee must have been employed by the employer at issue for the preceding twelve months and must have put in at least 1,250 "hours of service" during that time. 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a). In calculating the "hours of service," the Act incorporates by reference the legal standards set forth in § 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. 29 U.S.C. § 2611(2)(C). Yet, § 7 nowhere defines "hours of service." *See* 29 U.S.C. § 207; *Ricco v. Potter*, 377 F.3d 599, 604 (6th Cir. 2004). Rather, it sets forth the meaning of "regular rate," which primarily guides employers' overtime calculations. 29 U.S.C. § 207(e); *Ricco*, 377 F.3d at 604. Under § 7 of the FLSA, "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee," and expressly excludes several types of compensation *not* made for hours worked. 29 U.S.C. § 207(e); *cf. Minizza v. Stone Container Corp.*, 842 F.2d 1456, 1462 (3d Cir. 1988) (finding compensation specifically excluded under § 207(e)(2) shares "the essential characteristic" of not being paid for "hours worked or services rendered").

The FMLA implementing regulations clarify that

> [w]hether an employee has worked the minimum 1,250 hours of service is determined according to the principles established under the [FLSA] for determining compensable hours of work (see 29 CFR Part 785). The determining factor is the *number of hours an employee has worked* for the employer within the meaning of the FLSA. . . . Any accurate accounting of *actual hours worked* under FLSA's principles may be used.

29 C.F.R. § 825.110(c) (emphasis added). Accordingly, the regulations set forth at 29 C.F.R. Part 785 guide the determination of hours worked for purposes of the FLSA, as well as our analysis of the FMLA's "hours of service" requirement. *See id.*; Family and Medical Leave Act, 60 Fed. Reg. 2,180, 2,186 (Jan. 6, 1995) (codified at 29 C.F.R. § 825.100 et seq.) ("[T]he minimum hours of service requirement is meant to be construed in a manner consistent with the legal principles established for determining hours of work for payment of overtime compensation under § 7 of the FLSA and regulations under the act, . . . specifically 29 CFR Part 785 . . . and . . . 29 CFR 778.103."); S. Rep. No. 103-3, at 23 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 3, 25 (noting the "hours of service" requirement should be construed "under section 7 of the FLSA and regulations under that act, 29 CFR Part 785 (see 29 CFR 778.103)"); *see also* 29 C.F.R. § 778.103 ("The principles for determining what hours are hours worked within the meaning of the Act are discussed in Part 785 of this chapter.").

The regulations at 29 C.F.R. § 785.1 et seq. "discuss[] the principles involved in determining what constitutes working time." 29 C.F.R. § 785.1. The principles set forth therein, though few, direct a finding that "all hours are hours worked which the employee is required to give his employer." *Id.* at § 785.7 (*citing Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)); *see also id.* at § 785.6 (noting that § 3(o) of the FLSA partially defines "hours worked" by excluding "clothes-changing and wash-up time"); *id.* at § 785.11 ("Work not requested but suffered or permitted is work time."); *see also Plumley v. S. Container, Inc.*, 303 F.3d 364, 372 (1st Cir. 2002) (concluding that "hours of service" under the FMLA "include only those hours actually worked in the service and at the gain of the employer"). Discussing 'waiting time,' the regulations provide that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." *Id.* at § 785.16(a).

Applying these principles to the instant case, it becomes clear that Weekender Hours do not count towards "hours of service" for purposes of FMLA-eligibility. The parties do not dispute that the additional twenty Weekender Hours of compensation each pay period flow to participants as an incentive, and not as compensation for hours actually worked. Weekender Hours do not amount to "hours worked" because the employee is not "required to give his employer" twenty hours worth of time at work to receive the Weekender pay. Rather, during those twenty hours, Weekender employees may "use the time effectively for [their] own purposes," with no obligation to their employer. *Cf.* 29 C.F.R. § 785.16(a) ("waiting time" is not hours worked). Pursuant to the language of the statute and the implementing regulations, then, Plaintiff had not amassed sufficient "hours of service" to qualify for FMLA-protected leave.

In so concluding, we do not disturb this Court's previous holding in *Ricco v. Potter*, 377 F.3d 599, 600 (6th Cir. 2004), wherein we considered the FMLA's "hours of service" requirement. There, the U.S. Postal Service terminated the plaintiff who, after grieving her termination, received a "make whole" remedy – that is, she was reinstated "with full credit for years of service" and received back pay. *Id.* at 601. After reinstatement the plaintiff requested FMLA leave, but the Postal Service denied her request and claimed she did not meet the "hours of service" requirement. *Id.* Had the Postal Service given the plaintiff credit for hours she would have worked during the

period of wrongful termination, however, the plaintiff would have been FMLA-eligible. *Id.* Finding that neither the FMLA nor the FLSA defined "hours of service," the *Ricco* court followed the FMLA's directive that "an employee's 'hours of service' are to be calculated according to . . . § 207" and concluded that "the only plausibly applicable standards are those contained in the definition of the term 'regular rate.'" *Id.* at 604. The court observed that § 207 enumerates exceptions to the term "regular rate," and that the plaintiff's make-whole remedy did not fall within those exceptions inasmuch as "time that an employee does not work due to vacation or illness is conceptually dissimilar from time that an employee does not work due to unlawful termination." *Id.*

Ultimately, the *Ricco* court held that "make-whole relief awarded to an unlawfully terminated employee may include credit towards the hours-of-service requirement contained in the FMLA's definition of 'eligible employee.'" *Id.* at 600. Of course, the critical point in *Ricco* was that the employer *wrongfully terminated* the plaintiff, the plaintiff received a make-whole award, and "[t]he goal of a make-whole award is to put the employee in the same position that she would have been in" absent the employer's unlawful conduct. *See Ricco*, 377 F.3d at 605. The effect of the *Ricco* court's decision was to give the plaintiff credit for "hours that [she] would have worked but for her unlawful prior termination by her employer." *Id.* On remand, the district court was left to "determine . . . the number of hours that [the plaintiff] would have worked." *Id.* at 606. Inasmuch as the *Ricco* court focused on the hours worked (albeit hours that *would have been* worked) in approaching a factually dissimilar circumstance, our reading of the FMLA's "hours of service" requirement does not create a conflict with the *Ricco* court's analysis. Accordingly, we affirm the district court's grant of summary judgment, and find that the Weekender Hours do not count as "hours of service" for purposes of FMLA eligibility.

## II.    EQUITABLE ESTOPPEL DOES NOT APPLY

### A.    Standard of Review

This Court reviews the district court's grant of summary judgment *de novo*, as set forth in Section I.A., *supra*.

### B.    Estoppel to Challenge Eligibility Under 29 C.F.R. § 825.110(d)

Advancing an equitable estoppel argument, Plaintiff invokes the FMLA implementing regulations, which provide that "[i]f the employer confirms eligibility at the time the notice for leave is received, the employer may not subsequently challenge the employee's eligibility." 29 C.F.R. § 825.110(d). As the district court observed, sister circuits and lower courts within this Circuit alike have held that 29 C.F.R. § 825.110(d) exceeds the Department of Labor's ("DOL's") statutory authority and, therefore, is not a valid regulation.[5]   Nevertheless, the district court found it unnecessary to determine whether DOL validly exercised its authority inasmuch as the facts of Plaintiff's case render the provision inapplicable. Specifically, the district court held that Defendants "acted in accordance with the spirit of 29 C.F.R. § 825.110(d)" in treating the leave granted for Plaintiff's first surgery as FMLA-protected. (J.A. at 577) We agree.

---

[5]*See Woodford v. Cmty. Action of Greene County, Inc.*, 268 F.3d 51, 57 (2d Cir. 2001) ("The regulation exceeds agency rulemaking powers by making eligible under the FMLA employees who do not meet the statute's clear eligibility requirements."); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582-83 (7th Cir. 2000); *Evanoff v. Minneapolis Pub. Schs., Special Sch. Dist. No. 1*, 11 F. App'x 670, 671 (8th Cir. 2001) (unpublished); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 797 (11th Cir. 2000); *Rocha v. Sauder Woodworking Co.*, 221 F. Supp. 2d 818, 820 (N.D. Ohio 2002); *McQuain v. Ebner Furnaces, Inc.*, 55 F. Supp. 2d 763, 775-76 (N.D. Ohio 1999). For the most part, these cases have applied the framework set forth in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

On the facts of Plaintiff's case, 29 C.F.R. § 825.110(d) does not apply. The record clearly indicates that Defendants treated the leave for Plaintiff's first surgery, which lasted from May 13 through June 7, 2004, as FMLA-protected, notwithstanding her ineligibility due to a shortage of hours. Additionally, the record reflects that Defendant Loede informed Plaintiff on May 21, 2004 that, in Defendant Hospital's view, leave beyond the initially approved period would not be FMLA-protected. Despite this knowledge, Plaintiff scheduled a second surgery for June 3, 2004 and informed Defendants that she expected to return to work on July 5, 2004. When Plaintiff failed to return to work at the close of the initial approved period, Defendants permanently transferred Ms. Kiko to the Weekender Program in Plaintiff's stead. Thus, Defendants did not effectively "confirm[] eligibility" under FMLA for the second period of leave, and Plaintiff cannot invoke 29 C.F.R. § 825.110(d) to estop Defendants' challenge to her eligibility.

On appeal, Plaintiff argues that her approved request for FMLA-protected leave covered both surgeries and that she merely sought "to extend the length of time of her original leave." (Pl.'s Br. at 23) The problems with this argument are twofold. First, Plaintiff's FMLA leave request does not clearly request leave for both surgeries. Although Plaintiff listed "carpal tunnel syndrome (severe) bilateral wrists" as her health condition, Plaintiff requested leave only until June 7, 2004, and then noted as an aside, "2nd wrist to be done in June or July." (J.A. at 89) By its terms, then, Plaintiff's leave request did not extend to the surgery for her second wrist. Had she anticipated a return date following her second surgery, allowing for sufficient recovery time, Plaintiff would have informed Defendants of an expected return date sometime in July. What is more, the medical certification Plaintiff submitted along with the request referenced only the carpal tunnel release scheduled for Plaintiff's left wrist. Second, Plaintiff cites no authority for the proposition that the leave requested for her second carpal tunnel release constitutes an extension of the first period of leave.[6] Consequently, we affirm the district court with respect to Plaintiff's § 825.110(d) estoppel argument.

## C.    Common Law Equitable Estoppel

Alternatively, Plaintiff asserts that Defendants should be equitably estopped under the common law principles of equitable estoppel. The district court found that Plaintiff "ha[d] not produced sufficient evidence to withstand summary judgment on the issue" of equitable estoppel. (J.A. at 581) We hold that Plaintiff cannot successfully invoke the doctrine of common law equitable estoppel in this instance.

"The doctrine of equitable estoppel is a judicial doctrine of equity which operates apart from any underlying statutory scheme." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 724 (2d Cir. 2001). Consequently, "even in the absence of a formal regulation, the doctrine of equitable estoppel itself may apply where an employer who has initially provided notice of eligibility for leave later seeks to challenge that eligibility." *Woodford*, 268 F.3d at 57; *see also Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 336 (6th Cir. 2005) (leaving it to the district court on remand to determine whether the doctrine of equitable estoppel precluded an employer from challenging its employee's entitlement to FMLA-protected leave). To successfully invoke the doctrine, a claimant must show –

(1) conduct or language amounting to a representation of material fact;

(2) awareness of true facts by the party to be estopped;

---

[6]Plaintiff selectively cites to favorable text in 29 U.S.C. § 2612. However, the omitted language reveals very plainly that the statute does not support Plaintiff's argument.

(3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;

(4) unawareness of the true facts by the party asserting the estoppel; and

(5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Tregoning v. Am. Cmty. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993) (quoting *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)).

With respect to the leave for Plaintiff's first surgery, Plaintiff undoubtedly relied on Defendants' false representation that she was eligible for FMLA-protected leave. However, this reliance did not operate to her detriment. In recognition that it erred in approving her leave, Defendant Hospital treated this period as FMLA-protected. The record reflects that Plaintiff's slot in the Weekender Program remained protected until after the FMLA-protected period of leave had run. Ms. Kiko took Plaintiff's position in the Weekender Program when Plaintiff failed to return to work on June 8, 2004. Consequently, Plaintiff cannot show detrimental reliance.

The time that Plaintiff took for her second surgery presents a slightly different question. At the time that Plaintiff scheduled her second surgery (June 1, 2004), she had full and complete knowledge that, in Defendant Hospital's view, her hours fell short of the threshold for FMLA eligibility. On May 21, 2004, Defendant Loede informed her of this fact. Plaintiff points to nothing in the record to suggest that the second surgery had to occur before she returned to work for reasons of medical necessity. Nor did Plaintiff produce evidence that she had not fully recovered from the first carpal tunnel release surgery. Plaintiff proceeded to schedule her second surgery with full awareness of the true facts and, thus, cannot satisfy the fourth element of equitable estoppel. Moreover, any reliance on Defendants' representations would have worked to Plaintiff's benefit, and not her detriment, inasmuch as Defendants informed her that she did not meet the FMLA eligibility requirement and that leave beyond June 7, 2004 would not be FMLA-protected. As a result, Plaintiff's equitable estoppel argument – whether based on the regulation or on common law principles – necessarily fails.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order.