*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DANIEL DOBROWSKI,

    *Plaintiff-Appellant,*

  *v.*

JAY DEE CONTRACTORS, INC.,

    *Defendant-Appellee.*

No. 08-1806

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-13267—Lawrence P. Zatkoff, District Judge.

Argued: April 21, 2009

Decided and Filed: July 8, 2009

Before: BOGGS, Chief Judge; and MOORE and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Joseph F. Lucas, SKUPIN & LUCAS, P.C., Detroit, Michigan, for Appellant. Megan P. Norris, MILLER, CANFIELD, PADDOCK & STONE, P.L.C., Detroit, Michigan, for Appellee. **ON BRIEF:** Joseph F. Lucas, SKUPIN & LUCAS, P.C., Detroit, Michigan, for Appellant. Megan P. Norris, Brian M. Schwartz, MILLER, CANFIELD, PADDOCK & STONE, P.L.C., Detroit, Michigan, for Appellee. Rae T. Vann, NORRIS TYSSE LAMPLEY & LAKIS, LLP, Washington, D.C., for Amicus Curiae.

_____

## OPINION

_____

BOGGS, Chief Judge. Daniel Dobrowski appeals from the district court's grant of summary judgment in his Family and Medical Leave Act (FMLA) action. He argues that notwithstanding his admitted ineligibility for the Act's protections, defendant Jay Dee Contractor should be estopped from now denying his eligibility because defendant represented, prior to his taking leave, that he was eligible. Although we disagree in part

with the district court's reasoning, we agree with its resolution: equitable estoppel should not bar Jay Dee from raising non-eligibility as a defense to Dobrowski's FMLA claim. Accordingly, we affirm the grant of summary judgment.

**I**

Dobrowski, a mechanical engineer, was terminated by Jay Dee upon returning to work from an approved leave of absence for an elective surgical procedure undergone to treat his epilepsy. He was hired by Jay Dee in September 2003 and assigned to a joint-venture project for the Detroit Municipal Government to rehabilitate sludge thickeners at the Detroit Wastewater Treatment Plant. Dobrowski's primary responsibility was evaluating, coordinating, and processing shut-down requests from sub-contractors, which required portions of the wastewater plant to be turned off for completion of the tasks.

Dobrowski has been diagnosed with epilepsy since he was a child. Even though he took regular medication and underwent various treatments to control his disease, Dobrowski continued to have seizures as an adult. About six months prior to his October 2004 surgery, Dobrowski, in consultation with his physician, decided to explore additional treatment options, ultimately settling on a surgical option. In mid-July, his doctor cleared him for the surgery and scheduled it for October 15.

At that time, Dobrowski informed Jay Dee that he had scheduled the surgery in a meeting with his supervisor, A.G. Mekkaoui. He explained, "I got the okay and so I will be having surgery on this date." All parties appeared to have assumed that Jay Dee would grant him time off for the operation, but Dobrowski's conversations with his superiors over the next months did not eliminate all confusion over the amount of leave required. On September 10, 2004, Dobrowski sent an email to Jay Dee's President, Tom DiPonio, captioned "leave of absence" that identified his "operation coming up." He explained how much work he could miss depending on the "many ways this procedure could end up" and indicated that he thought with all the information provided, "a small meeting would clear things up."

Following that meeting between Dobrowski, DiPonio, and Makkaoui discussing the surgery and leave, DiPonio gave a Dobrowski a form headed "APPLICATION FOR LEAVE

OF ABSENCE UNDER THE FMLA." Dobrowski filled out the form and returned it, dated September 27, 2004. On October 5, DiPonio wrote to Dobrowski, memorializing the decision as to Dobrowski's leave. The letter indicated that Dobrowski was to take a week of paid vacation beginning October 11, 2004, have the surgery on October 15, and that "[p]ursuant to the Family and Medical Leave Act, Jay Dee Contractors, Inc. will leave [Dobrowski's] position open for at least twelve (12) weeks from October 18, 2004." DiPonio included with the letter the federal Department of Labor's "Employer Response to Employee Request for Family or Medical Leave" form that summarized Dobrowski's application, indicated that he was an eligible employee, and confirmed that the company was providing him with FMLA leave. It also stated that Dobrowski was to receive short term disability benefits from his insurance company, and that Jay Dee would "supplement the insurance payments . . . up to the level of [his] present salary."

Within four weeks after the surgery, Dobrowski decided that he could resume work and contacted DiPonio on November 22, 2004 about scheduling his return. They apparently agreed that, provided he receive his doctor's consent, Dobrowski would return in early December. On December 9, Dobrowski called DiPonio and left him a voicemail indicating that he would have the return-to-work letter on the following Monday, December 13. Dobrowski reported to Jay Dee's headquarters on that day and met with DiPonio.

It was then that DiPonio informed Dobrowski that he was being terminated. DiPonio explained that Jay Dee's work at the wastewater plant was winding down and they no longer needed Dobrowski's services. Dobrowski inquired about a transfer, but DiPonio said that none of the company's other projects needed an additional engineer. When asked why Jay Dee did not communicate its decision earlier, DiPonio responded "Why? So you could stay on medical leave?"

Dobrowski then sued in state court, alleging a violation of the Michigan Handicapper's Civil Rights Act. He later amended his complaint to include a claim under the FMLA, and Jay Dee removed the case to federal court. The district court declined to exercise supplemental jurisdiction over the state law claim and remanded it to state court.

Following discovery, Jay Dee moved for summary judgment, arguing that (1) Dobrowski was not eligible for FMLA protection because Jay Dee employed fewer than

50 employees within 75 miles of Dobrowski's work site; and (2) he was not entitled to reinstatement because his job was eliminated from the project. In response, Dobrowski argued that the doctrine of equitable estoppel applied to prevent Jay Dee from denying his eligibility after having indicated to him at the time of his surgery that he was eligible, and that the record established a material dispute of fact as to the second ground. The district court rejected these arguments, and granted summary judgment on each ground.

This timely appeal followed.

## II

The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). We draw all justifiable inferences in the light most favorable to the non-moving party, *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and review the district court's decision de novo. *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008). Because we resolve the eligibility dispute in Jay Dee's favor, we will not discuss the district court's alternative ground for granting summary judgment.

## A

All now agree that Dobrowski was not in fact eligible for FMLA protection because Jay Dee did not have the requisite 50 employees within 75 miles of the Wastewater worksite. Instead, the dispute centers on whether Jay Dee's statements that Dobrowski was being given FMLA leave now bind the defendant under the doctrine of equitable estoppel such that we should treat him as entitled to the Act's protections.[1]

Our circuit recognizes that in certain circumstances equitable estoppel applies to employer statements regarding an employee's FMLA eligibility, preventing the

---

[1] Jay Dee asserts that Dobrowski waived this estoppel argument by not expressly pleading it below. Though his initial pleadings do not include the estoppel argument, the question is properly presented for review because equitable estoppel is not a cause of action but a judicial doctrine that bars the assertion of a claim or defense. Dobrowski did raise his estoppel argument in his response to the motion for summary judgment that first asserted the eligibility defense, and the district court decided the issue.

employer from raising non-eligibility as a defense.[2]  *See Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 336 (6th Cir. 2005) (remanding for the district court to consider whether an employer is estopped from denying its employee's eligibility); *see also Davis v. Mich. Bell Telephone Co.*, 543 F.3d 345, 353 (6th Cir. 2008) (holding that the plaintiff could not establish the basis for equitable estoppel); *Mutchler v. Dunlap Memorial Hosp.*, 485 F.3d 854, 860-61 (6th Cir. 2007) (same); *Wilkerson v. Autozone, Inc.*, 152 F. App'x 444, 450 (6th Cir. 2005) (endorsing a district court's use of an equitable estoppel jury instruction). But our precedents do not make clear precisely which situations merit the application of equitable estoppel.  We have cited two different equitable estoppel rules in FMLA cases.

When we first recognized equitable estoppel in an FMLA case, we collected decisions from other courts of appeals to support the proposition that "under the right circumstances, an employer may be equitably estopped from challenging an employee's entitlement to [FMLA] leave." *Sorrell* 395 F.3d at 336 (citing *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 722-27 (2d Cir. 2001); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000)).  We provided no additional discussion of those circumstances, but two of the cited cases (*Duty* and *Kosakow*) that elaborated on them relied on the Supreme Court's decision in *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1986).  *See, e.g.*, *Kosakow*, 274 F.3d at 726.

---

[2]While Jay Dee challenges the applicability of the doctrine, amicus curiae, Equal Employment Advisory Council and the Chamber of Commerce of the United States, challenge its viability.  They argue that eligibility by estoppel "is impermissible under the act."  Amicus Br. 15. Many courts of appeals, including this one, have held that a Department of Labor regulation that imposed estoppel-like liability in all instances where an employer represented to the employee that she was eligible was not a reasonable interpretation of the statute's language and therefore was invalid.  *See Davis*, 543 F.3d at 353-54.  The friends of the court now rely on these cases to assert that a court should not do by case law what the Secretary of Labor could not do by notice and comment.  Amicus Br. 15.  This argument ignores the difference between statutory interpretation and the exercise of the court's equitable powers.  Equitable estoppel does not require the court to hold that the FMLA itself allows a theory of eligibility for employees other than those covered by the statute.  Instead, the court uses its traditional equitable power to prevent the employer from making an argument that it can be fairly determined to have forfeited based on its behavior toward an employee.  *See Thomas v. Miller*, 489 F.3d 293, 300-01 (6th Cir. 2007); *cf. Nken v. Holder*, 129 S. Ct. 1749, 1760 (2009) (holding that the traditional equitable power to grant a stay pending review is not affected by statutory restriction of injunction power).

There, the Supreme Court, commenting that the core principles of the doctrine are "tolerably clear," adopted the Restatement of Torts statement of the rule:

> If one person makes a definite misrepresentation of fact to another person having reason to believe that the other person will rely upon it and the other in reasonable reliance upon it does an act . . . the first person is not entitled
> . . .
> (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired.

*Heckler*, 467 U.S. at 59 (quoting Restatement (Second) of Torts § 894(1) (1979)).  The Court continued, "the party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Ibid.*  More recently, we cited *Heckler* for the generic proposition that an FMLA defendant should not be estopped where the plaintiff failed to show that the defendant had made any misrepresentation regarding her eligibility.  *See Davis*, 543 F.3d at 353.

In  the time between our decisions in *Sorrell* and *Davis* applying the Supreme Court's estoppel rule, we decided another FMLA estoppel case, *Mutchler v. Dunlop Memorial Hospital*, 485 F.3d 854.  We did not reference *Heckler*.  Instead, we followed a line of cases that discuss and apply equitable estoppel in the ERISA context. *Mutchler*, 485 F.3d at 861 (quoting *Tegoning v. Am. Community Mutual Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993)).  Those cases provide a more elaborate basis for estoppel, requiring that "[t]o successfully invoke the doctrine, a claimant must show":

> (1)  conduct or language amounting to a representation of material fact;
> (2)  awareness of true facts by the party to be estopped;
> (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a  right to believe that the former's conduct is so intended;
> (4) unawareness of the true facts by the party asserting the estoppel; and

(5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Ibid.*

The two versions of the estoppel rule contain a manifest difference. The Supreme Court's version of the rule does not require the party asserting the estoppel to show that the other party was aware of the "true facts" or that the other party intended for the statement to be relied upon – "[t]he rule . . . is operative although the one making the representation believes that his statement is true . . . ." Restatement (Second) of Torts § 894 cmt. b. And this difference is not without consequence. For instance, it appears likely that Jay Dee was not intentionally or recklessly misleading Dobrowski. It simply was mistaken as to how many employees it had near the Wastewater plant. Indeed, the district court, accurately citing and faithfully applying *Mutchler*, based its estoppel decision in part on the fact that a mistake is not sufficient to invoke equitable estoppel.

The better approach is to follow the requirements for equitable estoppel endorsed by the Supreme Court in *Heckler*. Even if "the hallmark of the doctrine is its flexible application," the Court underscored that "certain principles are tolerably clear" and quoted the Restatement for those principles. *Heckler*, 467 U.S. at 59. Our circuit should not now impose an additional knowledge or bad faith requirement – doing so only risks making the doctrine intolerably unclear.

This has been the view of most of the circuit courts to consider equitable estoppel in the FMLA context. *See, e.g.*, *Duty*, 293 F.3d at 493-94; *but see Martin v. Brevard County Pub. Schs.*, 543 F.3d 1261, 1266 & n.2 (11th Cir. 2008) (quoting a version of equitable estoppel similar to our statement in *Mutchler*). The two circuit courts to face the issue directly – whether equitable estoppel requires the party to be estopped to have known that it was making a misrepresentation – have followed *Heckler* and held that a party need only show a misrepresentation, a reasonable expectation of reliance on it, and reasonable reliance to invoke estoppel. *See Minard*, 447 F.3d at 359 (5th Cir. 2006) ("[A]n employer who without intent to deceive makes a definite but erroneous

representation to his employee that she is an 'eligible employee' and entitled to leave under FMLA, and has reason to believe that the employee will rely on it, may be estopped to assert a defense of non-coverage . . . ."); *Kosakow*, 274 F.3d at 726. We have favorably cited these cases and their discussion of estoppel (both in and out of the context of the FMLA). *See Thomas*, 489 F.3d at 302; *Sorrell*, 395 F.3d at 336; *Wilkerson*, 152 F. App'x at 450. Indeed, *Mutchler* itself applied only the portions of its stated rule that accord with *Heckler*'s approach, holding that the plaintiff's estoppel argument failed because she could not show that her reliance was reasonable (because she knew of her ineligibility) and that she could not show any detriment to her. *See* 485 F.3d at 861.

Moreover, there are important practical reasons to sometimes allocate the risk of a mistaken statement of FMLA eligibility to the employer and not the employee. The FMLA requires the employer to determine eligibility: "[o]nce an employer is given notice that the employee is requesting leave for a FMLA-qualifying reason, the employer bears the obligation to collect any additional information necessary for the leave to comply with the requirements of the FMLA." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). And the employer is the cheaper cost avoider. The employer is more likely to know the precise number of employees and more likely to have access to legal resources to determine the consequences of that number. The employer also likely will need to determine eligibility only once for each class of employees – the opposite rule duplicates this burden by requiring each employee, whenever leave is contemplated, to double-check eligibility. Indeed, a rule requiring the employee to know her status regardless of what an employer says is especially perverse because the employer may have exclusive control over employee data such that an employee could not – even if she wished – review the employer's assertion of eligibility prior to taking leave.

Accordingly, we hold that to prevail on his equitable estoppel argument, Dobrowski need meet only the requirements for equitable estoppel adopted by the Supreme Court in *Heckler* and discussed in the Restatement (Second) of Torts § 894.

He need not show that his employer either was aware of the true facts or intended for the statement to be relied on. Instead, Dobrowski need show only (1) a definite misrepresentation as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) a resulting detriment to the party reasonably relying on the misrepresentation. *See Minard*, 447 F.3d at 359.

**B**

Applying this standard, we agree with the district court that Dobrowski has not raised a dispute of material fact as to all the elements required to invoke the court's equitable powers. To be sure, Jay Dee's actions amount to a definite misrepresentation of his eligibility. He applied for leave on an FMLA form and received written notice from his company that his leave was "pursuant to the Family and Medical Leave Act" and that he was an "eligible employee" even though he was, in fact, not covered by the Act. But on the record before the court, Dobrowski cannot show that he detrimentally relied on this misstatement of eligibility.

There is no evidence in the record to show that he "change[d] his position" in reliance on the belief that his leave would be FMLA-protected. *Heckler*, 467 U.S. at 61. Had he relied on the erroneous representations, one would expect Dobrowski to be able to point to some action or statement that indicated that his decision to have the surgery was contingent on his understanding of his FMLA status; or perhaps evidence that raises an inference of such contingency – for example, a record that he made an inquiry as to his rights, asked for written confirmation of his leave arrangement, or changed his behavior after being told he was eligible. *Cf. Minard*, 447 F.3d at 359; *Kosakow*, 274 F.3d at 725; *Duty*, 294 F.3d at 494.[3] At the very least, Dobrowski could have placed an

---

[3]Dobrowski cites one fact that he argues raises an inference of reliance, but we are not persuaded that it raises a genuine issue of material fact for a jury to decide. He asserts that the fact that he "compli[ed] with FMLA procedures" permits an inference that he depended on the Act's protections when deciding to have the surgery. But the question is not whether Dobrowski acted in conformity with the FMLA – surely he informed his employer with proper documentation and provided the requisite 30 days notice – but whether he changed his behavior in reliance on the Act. For instance, in the case Dobrowski cites for this argument, *Duty v. Norton-Alcoa*, the plaintiff remained on leave beyond his FMLA period after receiving written assurance from his employer that his extended leave would be covered. When the employer defended against his suit on the ground that he had exhausted his leave, the court held that equity prevented it from doing so because the employee's actions in compliance with their assurances evidenced reliance on it. *Duty*, 294 F.3d at 493-94. As discussed in the text, there is no comparable evidence that

affidavit in the record stating that he would have forgone the surgery but for his belief that his job status was protected by the FMLA. *See* FED. R. CIV. P. 56(e). But none of this is present in the record.

If anything, the record shows that Dobrowski had already decided on and scheduled the surgery by the time he was informed of his eligibility. There is no evidence of a discussion of the FMLA eligibility prior to the application for leave filed with Jay Dee on September 27 – about three weeks prior to his October 15 surgery, and well after he informed the company of his planned absence. In deposition, Dobrowski indicated that he knew that he would undergo the surgery about six months in advance, and told Jay Dee as soon as he knew the date, "maybe three months before . . . the actual surgery." ROA 291-92. At that time, he said "I got the okay so I will be having surgery on [October 15]." ROA 292. After his superiors asked questions about how long he planned to take off work, Dobrowski organized a meeting to discuss his absence. His email preceding the meeting references his "operation coming up" and does not ask for permission to take leave, discuss his rights under the FMLA, or indicate a willingness to delay or reschedule depending on his legal status.

Dobrowski argues that because the surgery was elective, he could have rescheduled it had he known that he was not FMLA eligible. It is true in the abstract that he *could* have rescheduled it; but it is his burden on summary judgment to produce evidence supporting his estoppel claim, and the record must contain evidence permitting a finding that he *would* have. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Dobrowski points to no such evidence. And on our own review, taking inferences in his favor, as we must, we cannot find any evidence that tends to support his assertion. In fact, the most direct statement in the record as to Dobrowski's intent – that he "got the okay" and scheduled the surgery – suggests that at the time he was waiting only on his doctor's permission and not assurance of legal protection.

---

Dobrowski's behavior depended on Jay Dee's assurances.

In the alternative, Dobrowski argues that because he relied on Jay Dee's statement, he did not have the opportunity to investigate the number of employees working for Jay Dee's joint venture partner to attempt to argue that their employees should be pooled as "joint employers" under FMLA's implementing regulations. *See* 29 C.F.R. § 825.106. This argument is curious because now, after discovery, Dobrowski has had an opportunity to investigate whether he was eligible on a joint employer theory. Had it been true that there were more than 50 employees in the relevant area when counting *both* of the joint venturers, there would be no need for this equitable estoppel analysis, because Dobrowski could then demonstrate a genuine issue of material fact as to eligibility. *See Grace v. USCAR*, 521 F.3d 655, 662-63 (6th Cir. 2008). Since he cannot make that argument, he also cannot show that his failure to count other employees was a detriment because his counting could not have made him an eligible employee. And even if it could have made him eligible, there remains no evidence that legal protections for his leave were material to his decision to take it and, consequently, no evidence that he would have counted up the employees before getting the surgery.

Dobrowski's final argument is that this understanding of the record is at odds with the FMLA's requirements. The statute places a duty on an employee taking foreseeable leave to "make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer." 29 U.S.C. § 2612(a)(2)(A). Dobrowski reasons that by scheduling the surgery before applying for leave, he was merely living up to his statutory duty and that therefore viewing that action as demonstrating indifference towards an employer's later assertion of ineligibility puts an employee in a "Catch-22": don't schedule and you lose statutory protection, schedule and you lose protection in equity. This argument is premised on a misunderstanding of an employee's duties. The provision requires that an eligible employee not inconvenience an employer by scheduling a foreseeable treatment in an avoidably disruptive way. It does not mean that the employee must have scheduled treatment *prior to* applying for FMLA leave. And even if it did, that legal requirement would not excuse Dobrowski from the evidentiary requirement on summary judgment that an FMLA plaintiff arguing for

eligibility by estoppel must have *some* evidence permitting a finder of fact to conclude that the employee relied on the erroneous representation of eligibility.

The short of it is that the record contains no evidence that Dobrowski relied on Jay Dee's definite misrepresentation of his FMLA eligibility. Dobrowski therefore has not raised a genuine dispute of a material fact as to his equitable estoppel argument, and Jay Dee is entitled to judgment as a matter of law.

## III

For the foregoing reasons, the decision of the district court granting summary judgment to defendant Jay Dee Contractors is AFFIRMED.