# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1720

CAROLYN S. FAIN,

*Plaintiff-Appellant,*

v.

WAYNE COUNTY AUDITOR'S OFFICE,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 C 385—**Larry J. McKinney**, *Chief Judge.*

———————

ARGUED JANUARY 22, 2004—DECIDED OCTOBER 27, 2004

———————

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Carolyn Fain worked at the Wayne County Auditor's Office from 1990 until June, 1999. She did not work for most of the time period from January 1, 1999, through June 18, 1999, using personal leave, vacation, sick leave, and FMLA-qualified leave. On June 18, 1999, her position was terminated, and the circumstances surrounding that termination form the basis for this cause of action. Fain asserts that her termination violated the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, as well as the Americans with Disabilities Act of 1990

(ADA), 42 U.S.C. §§ 12101, *et seq.* The district court, however, granted summary judgment to the Auditor's Office, holding that the Auditor's Office did not qualify as an "employer" under the ADA and that Fain was not an eligible employee under the FMLA. For both statutes, the court's decision was based upon the number of persons employed by the Auditor's Office. The undisputed evidence was that the Auditor's Office never employed more than 12 employees at one time. The ADA's protections, however, apply only to employers with 15 or more employees, 42 U.S.C. § 12111(5), and the FMLA, as we will discuss shortly, essentially requires 50 employees in a given geographic area in order for an employee to seek its protections, 29 U.S.C. § 2611(2)(B). The district court viewed the Auditor's Office in isolation, rather than as a part of the Wayne County government as a whole. That decision ordained the result.

On appeal, Fain purports to challenge the grant of summary judgment on both the ADA and the FMLA claims. In the brief on appeal, however, Fain presents only the statutory and regulatory language from the FMLA, and her argument relates solely to that statute. The ADA portion of the brief includes just two sentences, declaring that the district court reached the same conclusion regarding both statutes and therefore we should reverse the ADA claim if we reverse the FMLA claim. Yet the district court opinion did not even address the proper FMLA provisions, and although Fain identifies the most relevant FMLA law, she cannot cite to any parallel provisions in the ADA. It is Fain's burden on appeal to present the arguments for reversing the district court. No effort was made to raise any argument based on the ADA. Only in the reply brief does Fain even address the distinction between the FMLA and the ADA, yet even there Fain merely identifies the ADA factors but then fails to apply them to the present case. That is insufficient to raise the issue in this court. Because only the FMLA issue is presented to this court, we address only that issue in this

opinion. Although the Auditor's Office argues that Fain waived her argument regarding the FMLA, the argument was sufficiently presented in the district court and here, and therefore we address that on the merits.

The FMLA generally applies only to employers with 50 or more employees, but the statute treats public agencies differently. The FMLA specifies that public agencies are "employers" under the statute regardless of the number of employees. 29 U.S.C. § 2611(4)(A)(3); 29 C.F.R. § 825.108(d). That numerical limitation, however, is resurrected elsewhere in the FMLA, which limits eligibility for FMLA protections to "eligible employees." 29 U.S.C. § 2611(2)(B)(2). The term "eligible employee" in the FMLA includes "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B). The regulations make clear that this provision applies to public agencies, stating "employees of public agencies must meet all of the requirements of eligibility, including the requirement that the employer (e.g. State) employed 50 employees at the worksite or within 75 miles." 29 C.F.R. § 825.108(d). Therefore, even though public agencies fall within the FMLA regardless of the number of employees, those employees cannot seek FMLA benefits unless the agency employed at least 50 employees within a 75 mile area.

Fain worked for the Auditor's Office, which was located in the County building along with many other departments of the County government. Although the Auditor employed only 12 employees, the County employed significantly more than the 50-employee threshold for FMLA employee eligibility within that County building. Accordingly, this appeal turns on whether the Auditor should be considered independent from the County.

We are not without guidance on that question. The regulations to the FMLA provide that:

> A state or a political subdivision of the state constitutes a single public agency, and, therefore, a single employer for purposes of determining employee eligibility. For example, a state is a single employer; a county is a single employer; a city or town is a single employer. Where there is any question about whether a public entity is a public agency, as distinguished from a part of another public agency, the U.S. Bureau of the Census' "Census of Governments" will be determinative, except for new entities formed since the most recent publication of the "Census." For new entities, the criteria used by the Bureau of Census will be used to determine whether an entity is a public agency or a part of another agency, including existence as an organized entity, governmental character, and substantial autonomy of the entity.

29 C.F.R. § 825.108(c)(1). Fain asserts that the issue is indeed in question here, and that the Census of Governments ("Census") establishes that the Auditor's Office is a part of the County and not a distinct public agency in itself. The defendant does not contest that the Census, if consulted, would defeat their position. Instead, they assert that we should never get to that point. They argue that when the regulation declares that the Census controls "where there is any question about whether a public entity is a public agency, as distinguished from a part of another public agency," that means that it controls only if state law does not already provide the answer. Where state law clearly reflects that the Auditor's Office is a distinct public agency, there is no question and therefore no need to resort to the Census.

As support for that position, they rely on the Sixth Circuit's decision in *Rollins v. Wilson County Government*, 154 F.3d 626 (6th Cir. 1998). In *Rollins*, the court interpreted

§ 825.108(c)(1) as requiring it to first ascertain whether state law definitively resolved the status of the governmental entities, and to resort to the Census of Governments only where state law did not so resolve it. *Id.* at 629. The court conceded that the regulation could also be read as directing courts to the Census whenever the issue was in dispute between the parties, but it rejected that interpretation in favor of its holding which gave more deference to the state's own determination of its governmental entities. *Id.*

The parties now raise the same dispute in this court, with Fain arguing that the Census is controlling because the status of the Auditor's Office is contested. That suggestion has its advantages, not the least of which is that it lends certainty to the issue and minimizes the need for extensive arguments in individual cases. Moreover, it is not difficult to imagine the potential for abuse by leaving the matter entirely to states. A state could then prevent its employees from taking advantage of FMLA protections by decreeing that each County department was a distinct public agency. But we do not have before us any evidence of such manipulation, and the *Rollins* approach has the benefit of giving meaning to all of the words of the regulations. As *Rollins* noted, if the Census were to control in all instances, the regulations could have said that much more clearly. *Id.* At a minimum, state law would retain relevance insofar as it informs the application of the three factors to new entities or to established entities for which post-Census changes would alter their status under the Census criteria. Ultimately, we need not definitively resolve the issue for this circuit, because even under the *Rollins* approach, a question remains in this case and therefore the Census controls.

A more comprehensive look at *Rollins* is illustrative. In that case, Linda Rollins worked for the Wilson County School System for eight months, and the Wilson County Finance Department for approximately four months. *Id.* at 627. Her eligibility for FMLA leave depended on whether those two

entities could be considered the same public agency under the FMLA. The court in *Rollins* appeared to assume that the Finance Department was part of the County, and instead examined only whether the School System was also a part of the County as opposed to a distinct public agency. In determining that the School System was a distinct agency not part of the County, the *Rollins* court relied on Tennessee state law which differentiated the two in terms of origins, functions, and management. *Id.* at 629 (noting that those differences were traced by the *Rollins* district court). The *Rollins* district court discussed those differences at some length. *Rollins v. Wilson County Government*, 967 F. Supp. 990, 996-97 (M.D. Tenn. 1997). That court held that under Tennessee state law, the county board of education was a separate and distinct governmental entity from the county government as revealed by the separate creation of the two entities, the differing governmental functions, and by the separate administration. *Id.* at 996. Specifically, the school systems of Tennessee were created by constitution, whereas the counties were statutorily created. *Id.* Moreover, Tennessee courts had held that public education was, at core, a state rather than county or municipal function. *Id.* State statutes set forth a uniform statewide system of public education and provided authority to the state commissioner of education. *Id.* Moreover, Tennessee law also recognized a separation of powers between a county school board and the county government officials. *Id.* at 996-97.

Those differences were apparent in Rollins' circumstances of employment as well. Rollins worked for both the School System and the County Finance Department as a payroll clerk, yet each job entailed different working hours, pay, supervisors, and offices. *Rollins*, 154 F.3d at 628. At the School System, she received paychecks issued by the Wilson County Board of Education, whereas the Wilson County Government issued her paycheck when she worked at the Finance Department. *Id.* When Rollins left the School System

to work for the County Finance Department, she had to fill out new insurance forms, tax forms, and employment eligibility forms. *Id.* Furthermore, the defendants in *Rollins* offered affidavit evidence that the two entities "have separate accounting books and methods, separate payrolls, separate management with related policies and procedures, separate insurance policies, separate workers' compensation policies, own separate real property, and are controlled by a separate group of government officials." *Rollins,* 967 F. Supp. at 997. The district court noted that the only connection between the Wilson County School System and the County Government was the allocation of county funds for operating the schools. *Id.* Accordingly, the courts held that under Tennessee law, there was no question that the School System was a distinct governmental entity from the County.

No similar differences are identifiable in the present case between the Auditor's Office and the County. The defendant contends that the Auditor's Office is distinct because it was a constitutional rather than a statutory creation. *See* Ind. Const. Art. VI, § 2. In addition, the defendant analogizes the Auditor's Office to the Sheriff's Office, relying on Indiana law regarding the latter to demonstrate that the Auditor's Office is a separate government. Specifically, the defendant contends that the Sheriff's office is created by the same constitutional provision, and that the Indiana courts have held that the county does not control the actions of the County Sheriff and is therefore not vicariously liable for the Sheriffs actions. *See Radcliff v. County of Harrison*, 618 N.E.2d 1325, 1328 (Ind. App. 1993); *Carver v. Crawford*, 564 N.E.2d 330, 334 (Ind. App. 1990); *Delk v. Bd. of Commissioners of Del. Cty.*, 503 N.E.2d 436, 440 (Ind. App. 1987). In those cases, the Indiana courts addressed whether the County could be held vicariously liable for the actions of employees of the Sheriff's department. The court held that because the County did not have control over those employees, they could not be held vicariously liable. The defendant main-

tains that the Auditor's Office is analogous to the Sheriff's Office as a separate constitutionally-created entity, and that those Indiana cases thus establish that the Auditor's Office is a distinct governmental entity.

There are numerous problems with that argument, not the least of which is that the defendant equates the determination of vicarious liability to the statutory determination of whether a department is an independent governmental agency or part of a governmental agency, yet provides no support for that argument. There is no support in the statutory language for equating the two. Instead, the statute references the Census, and where the Census is inapplicable, it requires courts to apply the same criteria used by the Census in identifying distinct public agencies. Those criteria are: existence as an organized entity, governmental character, and substantial autonomy of the entity, and the Census provides significant detail on the types of factors that can establish each of those criteria. *See* U.S. Census Bureau, *2002 Census of Governments, Vol. 1, Number 1, Government Organization* (2002) ("Census") at 10-12. The defendant has made no attempt to indicate whether state law mandates a finding that the Auditor's Office is an organized entity which has governmental character and substantial autonomy. In fact, the defendant has not identified any state authority addressing the status of the Auditor's Office, and certainly nothing definitively resolving the matter so as to forestall reliance on the Census. The analogy to the Sheriff's Office relies essentially on their common constitutional origin, but that cannot resolve all three of the above factors, and the two offices are obviously very different in their functioning. More fundamentally, no state law definitively establishes that the Auditor's Office, or even the Sheriff's Office for that matter, is a separate government. Caselaw holding that the County is not vicariously liable for the actions of an individual in the Sheriff's Office falls well short of "definitively establishing" that the Auditor's Office is a government agency rather than part of the County.

That is borne out by examination of the functions and operation of the Auditor's Office, which further reveals at least a "question" as to whether it is a part of the County. Unlike the School System in *Rollins*, which was physically separate from the County, maintained a separate payroll, and was under the authority of the school board that had no connections to the County, the Auditor's Office in the present case has far more ties to the County government. The Auditor's office is located in the County building along with other County departments. Moreover, in contrast to the situation in *Rollins*, Fain's paycheck is issued by the County government, not by the Auditor's Office, and the Auditor in this case relied on the County personnel department to handle the administration of Fain's leave. Furthermore, the duties of the Auditor's Office are closely tied to County government. Even the defendant acknowledges that the Auditor provides services to the county, county executive, and county fiscal body. One of the primary functions of the Auditor's Office is to act in a secretarial capacity for the County. See Ind. Code (IC) 36-2-9-7& 36-2-2-11 (auditor performs duties of clerk of the county executive, including attending all meetings of the county executive and recording the meetings in writing); IC 36-2-9-8 & 36-2-3-6(b) (auditor is clerk of the county fiscal body responsible for keeping an accurate record of proceedings and recording the votes); www.co.wayne.in.us/auditor/ (Wayne County website listing duties of Auditor by category, including secretarial duties which include acting as secretary to the County Commissioners and the County Council.) Other duties include providing notice of County meetings, preparing the budget for the County Council, and engaging in other responsibilities that "impact the financial well-being of county government," which interweave the auditor's position with the County government as a whole. *Id.* and IC 36-2-9-1 *et seq.* For instance, money may be paid from the county treasury only upon a warrant drawn by the auditor, but except for

certain circumstances delineated by statute, the auditor may only draw a warrant if the county fiscal body has made an appropriation for the money. IC 36-2-9-12 through 36-2-9-17.

Therefore, the duties of the Auditor's Office relate directly to the functioning and governance of the County, in contrast to *Rollins* which involved education, a field that the state supreme court had recognized as "essentially a state, rather than a county or municipal, function." *City of Harriman v. Roane County*, 553 S.W.2d 904, 908 (Tenn. 1977), *cited in Rollins*, 154 F.3d at 630. That distinction is in fact evident in the Census itself. The Census of Governments recognized that of the 15,014 public school systems in the United States in 2002, only 1,508 are classified as agencies of other governments, whereas the remaining 13,506 are independently included in the count of governments. Census at 9. The Census therefore recognized that school systems predominantly are not part of the county, but are independent. The *Rollins* court merely recognized that given the characteristics of its school system and the state law, the school system in that case fell within the majority rather than the exception. No similar trend exists in the Census for auditor's offices. In fact, although the Census lists a number of entities that should be considered independent rather than agencies of other governments, it does not include auditor's offices among them. That does not mean that an auditor's office will necessarily be a part of another governmental agency, but here there is nothing in either state law or the facts that would establish that the Auditor's Office is a separate public agency rather than a part of the County.

Because state law does not definitively resolve the issue, even under the defendant's interpretation of the regulation we must turn to the Census. All parties agree that the Census supports Fain's position, and therefore the district court improperly granted summary judgment to the defendant on the FMLA issue.

The decision of the district court granting summary judgment to the defendant on the FMLA claim is REVERSED, and the case REMANDED for further proceedings consistent with this opinion.


A true Copy:

      Teste:

                            _____

                            *Clerk of the United States Court of*
                                   *Appeals for the Seventh Circuit*