*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0197p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

DEBRA KINDS,

        *Plaintiff-Appellant*,

    *v.*

OHIO BELL TELEPHONE COMPANY,

        *Defendant-Appellee*.

No. 12-4048

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:10-cv-01596—Benita Y. Pearson, District Judge.

Decided and Filed: July 29, 2013

Before: GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** Mark P. Herron, HERRON LAW OFFICES, Cleveland, Ohio, for Appellant. Laura A. Lindner, LITTLER MENDELSON, P.C., Milwaukee, Wisconsin, Amy Ryder Wentz, LITTLER MENDELSON, P.C., Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Debra Kinds, a decade-long employee of the Ohio Bell Telephone Company, sought leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654, for nine weeks of work that she missed in late 2009. Ohio Bell denied Kinds's request for FMLA leave with respect to three of those weeks when she failed to timely provide medical justification for the leave, and it then fired her because of her documented history of unexcused absences.

Kinds subsequently filed a lawsuit against Ohio Bell, alleging that the company had unlawfully interfered with the exercise of her FMLA rights. The district court

1

granted Ohio Bell's motion for summary judgment and dismissed the case. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Kinds was involved in a mentally and physically abusive relationship with her live-in boyfriend that culminated in death threats and an assault that put Kinds in the emergency room on August 30, 2009. She told her supervisors about the abuse and requested time off from work to find a new place to live and to get her affairs in order. But Kinds did not have any vacation time available and was not eligible for FMLA leave because she had worked less than 1,250 hours for Ohio Bell during the previous 12-month period. *See* 29 U.S.C. § 2611(2)(A) (defining an "eligible employee" as one who has worked a minimum of 1,250 hours for the specific employer in the previous 12 months). Her supervisors nonetheless granted her one week of discretionary leave for the first week of September 2009.

Kinds returned to work after this discretionary leave and continued working until October 12, 2009, at which point she had accumulated enough hours of work to become eligible for FMLA leave. She applied for FMLA leave the following day and did not work again until returning part-time on December 15, 2009. After her eighth full day of absence in October, Ohio Bell took three relevant actions: (1) it notified the third-party administrator of its short-term disability insurance plan, Sedgwick Claims Management Services (Sedgwick), of Kinds's absence; (2) it notified its affiliated FMLA Operations Department in Texas of those same absences; and (3) it sent Kinds a form that confirmed her eligibility for FMLA leave and also informed her that a claim for short-term disability benefits had been initiated on her behalf. This form further indicated that Kinds did not need to submit an FMLA medical certification at that time.

The FMLA Operations Department sent a letter to Kinds on October 21, 2009 that acknowledged her FMLA leave request and stated that her period of absence "will result in a claim for Short Term Disability Benefits." In addition, the letter explained that if Kinds's claim for disability benefits were approved, then FMLA leave would run

concurrently.  And even if the claim were denied, the letter stated that Kinds would still "have the right to request FMLA consideration," but would in such event need to have her healthcare provider submit an "FMLA4" form to document "the medical facts . . . to support the denied absence period."  The letter further stressed that "[t]he FMLA4 is only required if your request for disability benefits has been denied."

Kinds first sought mental health treatment from Paula Reshotko, a licensed independent social worker, on November 3, 2009.  This counseling session was the first medical treatment that Kinds received during her October to December 2009 absence from work.  Reshotko diagnosed Kinds as having a "severe depression episode" and recommended further counseling.  Kinds saw Reshotko for counseling again on November 10th and 19th and saw her family physician, Dr. Suzana Sarac-Leonard, also on November 10th.

On November 24, 2009, Sedgwick sent Kinds a letter explaining that her claim for short-term disability benefits was approved "for the period of November 10, 2009 through December 14, 2009" but was denied with respect to "the period of October 20, 2009 through November 9, 2009."  Sedgwick determined that Kinds did not have disability status until November 10th based on both a review of the medical records furnished by Reshotko and additional information that Reshotko provided in a November 20th telephone call with Sedgwick.

Sedgwick's approval of disability benefits for a portion of Kinds's absence prompted two actions by Ohio Bell:  (1) it approved the first week of Kinds's absence (October 13th to October 20th) and the period for which she was determined to be disabled (November 10th to December 14th) for FMLA leave, and (2) it asked Kinds to submit an FMLA medical certification for the period that was not approved for disability benefits (October 20th to November 9th).  The first action was taken pursuant to Ohio Bell's leave policy and the programming of its electronic payroll system.  Under that policy, Ohio Bell automatically approves as FMLA leave the first seven days of an employee's period of absence whenever any part of that absence is approved for disability benefits and the employee is otherwise FMLA-eligible.  The second action

(requesting an FMLA medical certification) was taken when Kinds returned to full-time work on December 29, 2009.  Kinds was given until January 13, 2010 to submit the requested certification.

The deadline passed without Kinds or her healthcare providers submitting any documentation to support FMLA leave for the period in question.  On January 20, 2010, Kinds asked for an extension.  Ohio Bell agreed to the extension and gave Kinds until January 27th to submit the medical certification.  That date also passed with no submission to Ohio Bell of a medical certification, although Dr. Leonard did send a letter to Sedgwick on January 22nd certifying that she was providing Kinds "medical assistance . . . from October 20th to November 11th, 2009."  Sedgewick did not forward a copy of Dr. Leonard's letter to Ohio Bell, however, due to the restrictions on the sharing of private health information imposed by the Health Insurance Portability and Accountability Act of 1996 (HIPAA).  Moreover, Dr. Leonard's letter did not indicate what condition constituted Kinds's alleged disability.  On February 2, 2010, Ohio Bell denied Kinds's FMLA leave request because it had received no medical certification verifying her need for leave.

The denial letter explained that "[i]f this request for FMLA has been final[ly] denied due to circumstances beyond the employee's control, [the FMLA Operations Department] must be advised of the reason and provided a valid medical certification form accompanied by proof of extenuating circumstances within 15 days of the date of [the] final denial letter dated February 2, 2010."  Dr. Leonard submitted a "FMLA4" medical certification on February 16th, but neither Kinds nor Dr. Leonard provided any explanation for why this certification could not have been submitted prior to the January 27th deadline.  The FMLA Operations Department notified Kinds on February 22nd that her FMLA leave request stood as denied.

Ohio Bell determined that Kinds's absence from October 20th to November 9th of 2009 was unexcused, putting Kinds at risk of termination due to her prior history of unexcused absences.  She was not actually terminated, however, until March 30, 2010, after she lost her administrative appeal with Sedgewick regarding the denial of her

disability claim for the period in question. Ohio Bell's reason for awaiting the outcome of that appeal was that the FMLA denial would have been automatically rescinded had Sedgwick ultimately allowed Kinds's disability-benefits claim. But once Sedgwick denied Kinds's appeal, Ohio Bell proceeded to terminate Kinds's employment the following day.

## II. ANALYSIS

### A.      Standard of review

We review de novo a district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmoving party. *Spees v. James Marine, Inc.*, 617 F.3d 380, 388 (6th Cir. 2010). "Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### B.      Ohio Bell properly requested a medical certification under the FMLA

To establish a claim for interference with her FMLA rights, Kinds "must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008). Only the fifth element of Kinds's FMLA-interference claim is in dispute. More specifically, Kinds's claim is based solely on the alleged failure of Ohio Bell to timely request the medical certification as required by the applicable FMLA regulation.

The FMLA gives an eligible employee "a total of 12 workweeks of leave during any 12-month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employee entitled to FMLA leave must be restored to his or her former position or an equivalent position upon completion of leave, and "[t]he taking of leave . . . shall not

result in the loss of any employment benefit accrued prior to the date on which the leave commenced." *Id.* § 2614(a)(1)–(2).

The FMLA prohibits an employer from interfering with an employee's exercise of FMLA rights. *Id.* § 2615(a)(1). But "[a]n employer may require that a request for [FMLA leave] be supported by a certification issued by the health care provider of the eligible employee." *Id.* § 2613(a). Failure to timely provide a medical certification for which an employer has properly asked will generally preclude an employee's FMLA-interference claim. *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 567 (6th Cir. 2005) (denying the employee's FMLA claim where the medical certification form was turned in one day late).

Kinds does not dispute that Ohio Bell had the right to require a medical certification to verify her eligibility for FMLA leave. She instead contends that Ohio Bell did not comply with the applicable FMLA regulation when it requested the medical certification, and therefore her failure to provide the certification by the deadlines set by Ohio Bell does not foreclose her FMLA-interference claim. Kinds relies specifically on the following FMLA regulation that governs the timing of medical-certification requests:

> In most cases, the employer should request that an employee furnish certification at the time the employee gives notice of the need for leave or within five business days thereafter, or, in the case of unforeseen leave, within five business days after the leave commences. The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration. The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification.

29 C.F.R. § 825.305(b).

This regulation, according to Kinds, mandates that an employer request a medical certification within five business days after receiving notice of the need for leave or else forfeit the right to request a certification at all. She further argues that the exception to

this mandate—that "[t]he employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration," 29 C.F.R. § 825.305(b)—applies only if there is evidence that an employee acted fraudulently in seeking FMLA leave. Because Ohio Bell did not request a medical certification within five business days of receiving notice of Kinds's leave and was aware of no information suggesting that Kinds had been dishonest regarding why she took a leave of absence, Kinds concludes that the request for medical certification on December 29, 2009 was defective.

Kinds consequently contends that Ohio Bell's failure to properly request a medical certification precludes the company from denying her leave for lack of certification and from subsequently terminating her employment. She specifically relies on *Branham v. Gannett Satellite Information Network, Inc.*, 619 F.3d 563 (6th Cir. 2010), and *Wiseman v. Awreys Bakeries, LLC*, ___ F. App'x ___, No. 11-2323, 2013 WL 2233886 (6th Cir. May 22, 2013), to support her argument. But these two cases are both distinguishable because the employers in those cases did not request FMLA medical certifications. *See Branham*, 619 F.3d at 573 (holding that an employer was not entitled to deny FMLA leave when it had given an employee "no information about the FMLA certification requirement, the fact that such certification was due within fifteen days, or the consequences of failing to return an adequate certification"); *Wiseman*, 2013 WL 2233886, at *3 (reversing the district court's dismissal of an employee's FMLA suit based on the employee's failure to timely provide a medical certification because the employer "conceded in its briefing and at oral argument that it did not request a medical certification"). Ohio Bell, in contrast, unquestionably requested an FMLA medical certification from Kinds.

Kinds nonetheless maintains that *Branham* and *Wiseman* are analogous because, she contends, Ohio Bell's medical-certification request was defective. The alleged defect, however, is based on the employee-fraud requirement that Kinds reads into 29 C.F.R. § 825.305(b). But Kinds's argument fails because there is nothing in the text of the FMLA statute or regulations indicating that the discovery of employee fraud is the

only acceptable reason for an employer to request a medical certification after the five-business-day period following an employee's notification of leave.  In fact, Kinds cites nothing in the statute or the regulations that makes any reference at all to employee fraud.  Nor does she cite any caselaw to substantiate this highly narrow and nontextual reading of 29 C.F.R. § 825.305(b).  We decline to adopt a regulatory interpretation so devoid of any statutory, regulatory, or precedential basis.

Instead, we read the FMLA certification regulation according to its plain meaning and conclude that Ohio Bell's December 29, 2009 request properly triggered Kinds's duty to provide a medical certification within 15 days to verify her need for leave.  Sedgwick's denial of Kinds's disability claim for the period in question, while not sufficient to deny outright her request for FMLA leave, provided an adequate "reason to question the appropriateness of the leave." *See* 29 C.F.R. § 825.305(b).  The standard for disability status under Ohio Bell's short-term disability insurance policy is similar enough to the "serious health condition" standard for FMLA leave that denial of the former at least raises a question as to the appropriateness of the latter.

Moreover, Ohio Bell gave Kinds more than the 15 days required by the FMLA regulation to comply with its request for medical certification. *See id.* § 825.305(b). And because the failure to provide a medical certification is an independent basis for denying FMLA leave notwithstanding the appropriateness of that leave, we need not consider whether Kinds actually had a serious health condition during the period in question. *See id.* § 825.305(d) (providing that an employer may deny FMLA leave if the employee fails to submit a complete and sufficient certification); *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 566–67 (6th Cir. 2005) (forgoing an inquiry into the merits of the medical condition where the employee submitted the medical certification one day past the FMLA-compliant deadline).

Ohio Bell, in sum, was not required by either the FMLA statute or the regulations to promptly exercise its right to request a medical certification when Kinds first gave notice of her need for leave.  It instead properly exercised that right upon having reason to question the appropriateness of her leave after Sedgwick denied short-term disability

benefits for the full period requested by Kinds. The company's policy of deferring such requests is actually beneficial to its employees because only those employees taking extended leaves for medical issues who have been denied short-term disability benefits are required to provide medical certifications.

Kinds's argument is based entirely on a legal interpretation of 29 C.F.R. § 825.305(b) that we conclude has no merit. She has not otherwise demonstrated a genuine issue of material fact on the issue of being denied FMLA benefits to which she was entitled. We therefore conclude that her FMLA-interference claim fails as a matter of law.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.