RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TERRY TILLEY,

                    *Plaintiff-Appellant,*

    *v.*

KALAMAZOO COUNTY ROAD COMMISSION;
KALAMAZOO COUNTY ROAD COMMISSION BOARD
OF COMMISSIONERS,

                    *Defendants-Appellees.*

No. 14-1679

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:13-cv-00221—Robert Holmes Bell, District Judge.

Argued: January 15, 2015

Decided and Filed: January 26, 2015

Before: SUHRHEINRICH and GRIFFIN, Circuit Judges; LEITMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** William F. Piper, WILLIAM F. PIPER, PLC, Portage, Michigan, for Appellant.
Robert C. Stone, SMITH HAUGHEY RICE & ROEGGE, Grand Rapids, Michigan, for
Appellees. **ON BRIEF:** William F. Piper, WILLIAM F. PIPER, PLC, Portage, Michigan, for
Appellant. Robert C. Stone, Jon Vander D. Ploeg, SMITH HAUGHEY RICE & ROEGGE,
Grand Rapids, Michigan, for Appellees.

_____

[*]The Honorable Matthew F. Leitman, United States District Judge for the Eastern District of Michigan,
sitting by designation.

———————————

**OPINION**

———————————

LEITMAN, District Judge.   In this action, Plaintiff-Appellant Terry Tilley ("Tilley") alleges that Defendant-Appellee Kalamazoo County Road Commission (the "Road Commission") terminated his employment based on his age in violation of Michigan's Elliot-Larsen Civil Rights Act (the "ELCRA"), M.C.L. § 37.2201 *et seq.*, and that the Road Commission interfered with his right to, and retaliated against him for taking, medical leave under the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601 *et seq.*  The district court granted the Road Commission's motion for summary judgment on all of Tilley's claims.  For the reasons that follow, we **AFFIRM** summary judgment on Tilley's ELCRA age-discrimination claim and **REVERSE** summary judgment on Tilley's claims under the FMLA.

**I.**

Tilley is 59 years old.  He began working for the Road Commission in 1993.  In 2008, Tilley began reporting principally to Travis Bartholomew, the Road Commission's general superintendent.

Tilley's relationship with Bartholomew deteriorated in 2010.  In March of that year, Bartholomew formally reprimanded Tilley for allegedly displaying a disrespectful attitude, and Bartholomew required Tilley attend Employee Assistance Program counseling.  In January 2011, Bartholomew reprimanded Tilley a second time after Tilley purportedly failed to submit a set of organizational goals by a deadline Bartholomew had set.

Three additional disputes between Tilley and Bartholomew in the spring of 2011 precipitated Tilley's firing and this lawsuit.  The first dispute related to Bartholomew's request that Tilley draft a job description.  Tilley completed the draft and submitted it to Bartholomew.  Bartholomew reviewed it and directed Tilley to make certain revisions.  Tilley says that each time he tried to submit a final version of the job description, Bartholomew directed him to make additional changes – and thereby unfairly prevented him from completing the project.

The second dispute related to Bartholomew assigning Tilley to investigate alleged safety violations at a Road Commission garage. Tilley did not believe he was the proper person to conduct the investigation. Tilley nonetheless conducted the inquiry and ultimately issued oral warnings to five Road Commission employees. Bartholomew was not satisfied with the discipline Tilley imposed, and he ordered Tilley to issue written reprimands to the employees in question. Tilley says when he provided drafts of the reprimands to Bartholomew, Bartholomew again repeatedly demanded that Tilley revise his work – and again frustrated Tilley's ability to complete the assignment.

The third and final dispute related to an incident at a job site in Kalamazoo Township. After Tilley visited the site, two women who were upset over a drainage issue blocked Tilley's vehicle and refused to let him leave the property. Tilley reported the incident to Joanna Johnson ("Johnson"), the Road Commission's managing director, and Johnson informed Bartholomew. After Bartholomew spoke with one of the women, he called the Kalamazoo Township Police Department. Bartholomew told the police that one of the women had alleged that Tilley bumped her with his car – a claim Tilley strenuously denied and which was never substantiated. The police arrived and defused the situation, and Tilley returned to his office. Bartholomew then ordered Tilley to obtain a copy of the police report and prepare his own summary of the incident.

On July 20, 2011, Bartholomew suspended Tilley for five days, ostensibly for failing to complete any of the three assignments described above – the job description, the written reprimands, and the summary of the Kalamazoo Township incident. Bartholomew accompanied the suspension with a written reprimand in which he gave Tilley new deadlines to complete the three assignments. Bartholomew ordered Tilley to submit final versions of the employee reprimands by July 28; the summary of the Kalamazoo Township incident by July 29; and the updated job description by August 1. Bartholomew advised Tilley in writing that the reprimand constituted his "final warning," that Tilley needed to "complete the tasks assigned to [him] previously within the new timelines provided," and that "[a]ny continued performance related deficiencies or any unacceptable conduct or attitude will not be tolerated and [his] employment . . . will be terminated."

Tilley insists that, in compliance with Bartholomew's deadline, he completed and submitted the written employee reprimands to Bartholomew before the close of business on July 28. The Road Commission does not dispute that Tilley turned in a version of the reprimands to Bartholomew on July 28. However, the Road Commission contends that Bartholomew found Tilley's July 28th submission deficient, and that Tilley never submitted a satisfactory final version of the reprimands as directed.

Next, Tilley says that he completed and submitted his final report of the Kalamazoo Township incident before July 29. Tilley, however, admits that he did not provide his report directly to Bartholomew by that date. Tilley says that instead he gave the finished report to area superintendent Bill DeYoung ("DeYoung") before the July 29th deadline, with instructions for DeYoung to deliver the report to Bartholomew. DeYoung, however, failed to deliver the report to Bartholomew until August 3 – five days after the July 29 deadline.

Finally, Tilley did not complete and submit the updated job description by the third and final deadline on August 1. Tilley explains that on that morning, before he could complete his final edits to the job description, he experienced symptoms that made him fear that he was suffering a heart attack. A co-worker took Tilley to the hospital, and Tilley was admitted for observation. Tilley's doctors discharged him the next day (August 2). That day, Tilley's wife informed the Road Commission that Tilley would not be able to return to work until at least August 5. Tilley never submitted the final revisions to the job assignment.

On August 9, Carla Benison ("Benison"), an "employee representative" for the Road Commission sent Tilley FMLA paperwork related to his absence from work. In her cover letter, Benison told Tilley that he was "eligible for FMLA leave" and that it was "important that we [] utilize Family Medical Leave Act (FMLA) leave" during his time off. Benison also provided Tilley a "Notice of Eligibility and Rights & Responsibilities" form (the "Eligibility Notice") on which Benison checked the box "inform[ing]" Tilley that he was "eligible for FMLA leave." The Eligibility Notice contained another box to be checked when an employee was "not eligible for FMLA leave" because he "[did] not work and/or report to a site with 50 or more employees within 75-miles," but Benison left this alternate box blank. Finally, the Eligibility Notice

informed Tilley that he needed to obtain and submit an appropriate medical certification from his physician to support his request for FMLA leave.

On August 12, the Road Commission mailed Tilley a letter formally terminating his employment. The Road Commission told Tilley that it was terminating his employment because, despite his claims to the contrary, he had failed to timely submit final and satisfactory versions of the employee reprimands, his summary of the Kalamazoo Township incident, and the job description.

Following his termination, Tilley filed suit in the Kalamazoo County Circuit Court. As relevant to this appeal, Tilley alleged that the Road Commission terminated his employment due to his age in violation of the ELCRA. Tilley further claimed that the Road Commission interfered with his right to FMLA protected leave and retaliated against him for taking such leave when it terminated his employment.

The Road Commission removed the action to the United States District Court for the Western District of Michigan, and, following discovery, moved for summary judgment on all of Tilley's claims. The district court granted the Road Commission's motion.[1]

The district court held that Tilley had failed to establish a *prima facie* case of age discrimination in violation of the ELCRA. That court explained that Tilley had failed to show that he was replaced by a younger person or that the Road Commission treated similar-situated younger employees differently than it treated him. The district court then held that even if Tilley had established a *prima facie* case of age discrimination, it still would have granted summary judgment in favor of the Road Commission on Tilley's ELCRA age-discrimination claim because the Road Commission had provided a legitimate, non-discriminatory, non-pretextual reason for his termination: his failure to complete assignments by the deadlines Bartholomew had set.

---

[1]In addition to his ELCRA age-discrimination claim and his FMLA claim, Tilley also asserted in his governing Complaint (1) a retaliation claim under the ELCRA, (2) a claim under Michigan's Whistleblowers' Protection Act, MCL § 15.362, and (3) a claim under Michigan's Persons With Disabilities Civil Rights Act, MCL § 37.1101 *et seq.* In response to the Road Commission's summary judgment motion, Tilley abandoned these additional claims. The district court subsequently granted the Road Commission summary judgment on these counts of Tilley's Complaint, and Tilley has not challenged those portions of the district court's decision in this appeal. These claims are therefore not before us and are not at issue in this appeal.

The district court next held that the Road Commission was entitled to summary judgment on Tilley's FMLA claims because Tilley was not an "eligible employee" under the FMLA. The district court held that, pursuant to 29 U.S.C. § 2611(2)(B)[2], an employee of a public agency qualifies as an "eligible employee" only if, among other things, his employer employs at least 50 employees at, or within 75 miles of, his workplace at the time the employee seeks FMLA leave (the "FMLA 50/75-Employee Threshold"). The district court then concluded that Tilley was not an "eligible employee" because the Road Commission employed fewer than 50 employees at, or within 75 miles of, Tilley's workplace at the time Tilley sought FMLA leave.

The district court also rejected Tilley's alternative argument that even if he was not an "eligible employee" under the FMLA because of the FMLA 50/75-Employee Threshold, the Road Commission was equitably estopped from denying that he was eligible to apply for FMLA benefits. The district court held that Tilley failed to present any evidence that he detrimentally relied on a statement by the Road Commission that he was an "eligible employee," and, accordingly, the Road Commission was not estopped from challenging his eligibility to seek FMLA benefits.

The district court entered final judgment in favor of the Road Commission on May 13, 2014. Tilley timely appealed on May 29, 2014.

**II.**

We review the district court's order granting the Road Commission summary judgment *de novo*. *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "The moving party bears the burden of proving that there are no genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, (1986).

---

[2]This provision of the FMLA states in relevant part: "The term 'eligible employee' does not include . . . any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii).

**III.**

Tilley argues that the district court erred when it granted the Road Commission summary judgment on his ELCRA age-discrimination claim. We disagree.

The ELCRA prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age[.]" MCL § 37.2202(1)(a). ELCRA age-discrimination claims are analyzed under the same framework as discrimination claims brought under the federal Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq. See Geiger*, 579 F.3d at 626. A plaintiff may establish a violation of the ADEA or ELCRA through "either direct or circumstantial evidence." *Id.* at 620.

Tilley seeks to establish a violation of the ELCRA through use of circumstantial evidence. Circumstantial evidence in this context is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* (quoting *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). We test the sufficiency of Tilley's circumstantial evidence under the familiar analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 818 (6th Cir. 2011).

The first step of this analysis asks whether Tilley has presented a *prima facie* case of unlawful discrimination. As we have explained:

> To state a *prima facie* case on a disparate treatment theory using circumstantial evidence a plaintiff must establish the four elements of the well-known *McDonnell Douglas* test: 1) that []he was a member of a protected class; 2) that []he was discharged; 3) that []he was qualified for the position held; and 4) that []he was replaced by someone outside of the protected class.
>
> Once a plaintiff satisfies [his] *prima facie* burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination.

*Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (internal citations omitted). In ELCRA age discrimination cases such as this one, a plaintiff may also

satisfy the fourth element of his *prima facie* case "with evidence that the defendant treated the plaintiff differently than persons of a different age class who engaged in the same or similar conduct." *Provenzano*, 663 F.3d at 818 (citing *Town v. Michigan Bell Telephone, Co.*, 568 N.W.2d 64, 68 (1997)).

The parties do not dispute that, for the purposes of his summary judgment motion, Tilley satisfied the first three prongs of his *prima facie* case. The question before us is whether he satisfied the fourth element. The district court correctly determined that Tilley did not. Tilley has not alleged, much less presented evidence that, he was replaced by a younger worker. Nor has Tilley identified any younger Road Commission employee who engaged in similar misconduct – i.e., failed to complete assignments by stated deadlines – yet remained employed with, and/or undisciplined by, the Road Commission.

In an effort to save his claim, Tilley argues that the *McDonnell Douglas* standard was "never intended to be rigid, mechanized or ritualistic" and that the "elemental requirements can vary depending on the context." Tilley insists that "the fourth element of the prima facie case therefore becomes whether the plaintiff can present direct, circumstantial or statistical evidence, or any combination thereof, tending to show that [the Road Commission] singled [him] out [] for discharge for impermissible reasons." Tilley argues that he presented such evidence by showing that the Road Commission "engaged in a pattern of age discrimination in hiring and terminating [employees]."

We have carefully reviewed the evidence submitted by Tilley, and we find that it falls far short of establishing a "pattern" of anything, much less a pattern of age discrimination sufficient to satisfy the fourth prong of his *prima facie* case. Tilley's imprecise "pattern" evidence includes individuals whose ages he does not know and merely estimates; individuals who voluntarily retired without ever facing any identified adverse employment actions; and individuals who were criticized but not fired. Tilley also tells us that another individual sued the Road Commission for age discrimination, but he provides no evidence that the other plaintiff was, in fact, discriminated against. The circumstances of the individuals who make up Tilley's alleged "pattern" are not sufficiently defined and, when defined, are not sufficiently similar, to establish a meaningful pattern of age discrimination.

Moreover, Tilley failed to properly present his purported "pattern" evidence to the district court. The bulk of that evidence was contained in a twenty-eight page legal brief – and the over 400 pages of attached exhibits – that Tilley's counsel had filed in a different state court discrimination lawsuit on behalf of a different plaintiff, Dave Barnes (the "State Court Brief"). Tilley purported to "incorporate[] as though fully set forth herein [the] legal analysis [in] and evidence" attached to the State Court Brief. Tilley had no right to do so. Tilley's brief to the district court was the maximum twenty-five pages allowed by that court's rules. The rules did not allow him to submit an *additional* brief that, itself, exceeded that court's page limits by three pages. Tilley cannot complain on appeal that the district court gave inadequate weight to the State Court Brief and its voluminous attachments. In any event, the State Court Brief casts further doubt on Tilley's claim that he got caught up in a wave of age discrimination. Indeed, the first two references to Tilley in the State Court Brief highlight that Tilley's superiors "resent[ed]" him because he reported that one of them had been driving while intoxicated and because he was perceived to have been responsible for the termination of another superior – not because of his age.

The district court correctly concluded that while Tilley's superiors may have harbored animus against him, Tilley failed to present evidence that that animus was linked to his age. Accordingly, Tilley failed to satisfy the fourth element of his *prima facie* case, and the district court correctly granted summary judgment against Tilley on his ELCRA age-discrimination claim.[3]

## IV.

The district court held that the Road Commission was entitled to summary judgment on Tilley's FMLA claims because Tilley was not an "eligible employee" under the FMLA. That court also rejected Tilley's alternative argument that even if he did not qualify as an "eligible employee," the Road Commission was equitably estopped from denying his eligibility to apply

---

[3]Because Tilley has failed to establish a *prima facie* case of discrimination, "this Court need not reach the further questions of pretext involved in the *McDonnell Douglas* balancing framework." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 917 (6th Cir. 2013); *see also Humenny v. Genex Corporation, Inc.*, 390 F.3d 901, 906-907 (6th Cir. 2005) ("The district court found that, even if Appellant made a *prima facie* showing that she was discriminated against . . . she failed to establish that Appellees' proffered reason for the employment action against Appellant was a pretext for discrimination. However, because Appellant did not establish a *prima facie* case, this Court need not address the issue of pretext").

for FMLA benefits.   We agree with the district court that, as a matter of law, Tilley did not qualify as an "eligible employee" under the terms of the FMLA.   Unlike the district court, however, we conclude that there is a material factual dispute as to whether the Road Commission is equitably estopped from denying that Tilley is an "eligible employee."

A.

The FMLA provides employees "a total of 12 workweeks of leave during any 12-month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).   Upon returning from FMLA-protected leave, an employee must be restored to his or her former position or an equivalent position; "[t]he taking of leave . . . shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." 29 U.S.C. § 2614(a)(1)-(2).   Importantly, these FMLA benefits are not available to all employees.   Only an "eligible employee" who works for an "employer" – as both terms are defined under Act – may obtain such benefits.   *See, e.g., Kinds v. Ohio Bell Telephone Co.*, 724 F.3d 648, 652 (6th Cir. 2013) (stating requirements).

The district court held that Tilley was excluded from the class of "eligible employees" pursuant to the FMLA 50/75-Employee Threshold because the Road Commission did not employ at least 50 employees at, or within 75 miles of, his worksite at the time he sought FMLA leave.   Tilley counters that public employees are not subject to the FMLA 50/75-Employee Threshold.   Tilley insists that a public employee may be an "eligible employee" under the FMLA even if his employer does not employ at least 50 employees at, or within 75 miles of, his workplace at the time he seeks FMLA leave.

The district court properly rejected Tilley's reading of the FMLA.   Indeed, Tilley does not point to any language in the FMLA – and, more importantly, there is none – that excludes public employees from the FMLA 50/75-Employee Threshold.   Moreover, the Code of Federal Regulations expressly recognizes that the FMLA 50/75-Employee Threshold *does* apply to public employees. *See* 29 C.F.R. § 825.108(d) ("[E]mployees of public agencies must meet all of the requirements of eligibility, including the requirement that the employer (e.g., State) employ 50 employees at the worksite or within 75 miles").   And we have recently applied the FMLA 50/75-Employee Threshold to employees of a public agency.   *See Mendel v. City of Gibraltar*,

727 F.3d 565, 568-569 (6th Cir. 2013) (applying FMLA 50/75-Employee Threshold to volunteer firefighters). The United States Court of Appeals for the Seventh Circuit has likewise confirmed, in direct contravention of Tilley's argument here, that employees of a public agency "cannot seek FMLA benefits unless the agency employed at least 50 employees within a 75 mile area." *Fain v. Wayne County Auditor's Office*, 388 F.3d 257, 259 (7th Cir. 2004).

Tilley has not cited any decision from any court adopting a contrary reading of the FMLA 50/75-Employee Threshold. Instead, he notes that the FMLA specifically provides that a public agency is an "employer," *see* 29 § U.S.C. 2611(4)(A)(iii), and he insists that applying the FMLA 50/75-Employee Threshold here would create "the oxymoron that a public employer with less than 50 employees is covered under the FMLA but none of its employees would ever be eligible to take a leave under the FMLA." Tilley adds that applying the FMLA 50/75-Employee Threshold to public employees would render "superfluous and nugatory" the provision of the FMLA designating public agencies as "employers." These arguments miss the mark. The FMLA 50/75-Employee Threshold can easily be read in harmony with the provision of the FMLA designating public agencies as "employers." Read together, the two provisions lead to the entirely sensible conclusion that public employees, like their private counterparts,[4] are eligible to apply for FMLA benefits if and only if, among other things, their employer employs a minimum number of employees within a set radius of their workplace. There is nothing illogical in concluding, as we do, that Congress intended to restrict FMLA benefits to public employees who work for public employers with a not-insubstantial workforce.

Finally, Tilley argues that even if the FMLA 50/75-Employee Threshold applies to public employees like him, there is a question of fact as to whether the Road Commission actually employed at least 50 employees within 75 miles of Tilley's worksite. The record does not support Tilley's position. The Road Commission presented evidence that it employed less than 50 people within a 75 mile of Tilley's workplace when Tilley requested his FMLA leave in August 2011. Tilley has not presented any evidence to the contrary. Instead, Tilley countered with evidence that the Road Commission arguably employed at least 50 employees within the

---

[4]Employees at private employers are eligible to apply for FMLA benefits only if the FMLA 50/75-Employee Threshold is satisfied. *See, e.g., Humenny*, 390 F.3d at 904-06 (applying FMLA 50/75-Employee Threshold to employee at private corporation).

relevant radius in July 2011 – the month before Tilley sought leave.  But the number of employees at that time is not relevant.  For purposes of the FMLA 50/75-Employee Threshold, the number of employees "is determined when the employee gives notice of the need for leave." 29 C.F.R. § 825.110(e).  Because there is no evidence that the Road Commission met or exceeded the FMLA 50/75-Employee Threshold at the time Tilley requested his FMLA leave, the district court properly held that, as a matter of law, Tilley was not an "eligible employee."

B.

"Our circuit recognizes that in certain circumstances equitable estoppel applies to employer statements regarding an employee's FMLA eligibility, preventing the employer from raising non-eligibility as a defense." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009).  We have held that in order "to prevail on his equitable estoppel argument," an employee "need show only (1) a definite misrepresentation as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) a resulting detriment to the party reasonably relying on the misrepresentation." *Id*. at 557.  Tilley has presented sufficient evidence on all three elements to withstand summary judgment.

First, Tilley showed that the Road Commission's Personnel Manual (the "Manual") contained a clear misrepresentation as to his eligibility to apply for FMLA benefits.  The Manual, which told employees that it served as "a guide to basic benefits, working conditions and policies" of the Road Commission, stated, in relevant part: "Employees covered under the Family and Medical Leave Act are full-time employees who have worked for the Road Commission and accumulated 1,250 work hours in the previous 12 months."  This is an unambiguous and unqualified statement that Road Commission employees, like Tilley, who have logged 1,250 hours in the year before seeking FMLA leave *are* covered by the FMLA and *are* eligible to apply for FMLA benefits. *Cf. Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1136-37 (7th Cir. 2001) ("But it is hard to construe the statement in the [summary of employee benefits] that '*all* employees with one year of service who worked 1,250 hours with Pearle in the

12 months immediately prior to requesting leave' are eligible for the FMLA as anything other than an express promise" of eligibility).[5]

The Road Commission could have qualified its statement concerning employee eligibility by adding that its full-time employees would only be covered by the FMLA if they worked at, or within 75 miles of, a site at which the Road Commission employed at least 50 employees. That is precisely what other employers have done. *See Myers v. Tursso Company*, 496 F. Supp. 2d 986, 990 (N.D. Iowa 2007) (employee handbook stated that full-time employees would be eligible to seek FMLA benefits "if," among other things, "there are at least 50 employees within 75 miles"). And courts have recognized that such qualifying language may effectively communicate to employees that they are assured of eligibility only if the FMLA 50/75-Employee Threshold is met. *Cf. Pearle Vision*, 251 F.3d at 1137. We conclude that the Road Commission's unqualified statement that employees in Tilley's position are covered under the FMLA satisfies the misrepresentation element of the equitable estoppel test. *See Myers*, 496 F. Supp. 2d at 998 (similar statement in employee handbook held sufficient to satisfy misrepresentation element of FMLA equitable estoppel claim).[6]

The Road Commission counters that the statements concerning FMLA eligibility in the Manual cannot be "a sufficient 'misrepresentation' to create equitable estoppel" because under the FMLA's implementing regulations "a covered employer [like the Road Commission] is required to provide some type of notice to all employees even if it has one or even no eligible employees." (Road Commission's Brief at 45, citing 29 C.F.R. § 825.300(a)(1)-(3).) The Road Commission's reliance on the regulations is misplaced. The regulations do not require employers to make statements, like those in the Manual, that lead employees to believe that they are, in fact, eligible to seek FMLA benefits irrespective of whether the FMLA 50/75-Employee Threshold is satisfied. Indeed, the United States Department of Labor's template FMLA notice form – promulgated pursuant to the very regulation cited by the Road Commission, *see*

---

[5] *Pearle Vision* involved a claim for breach of contract, not for equitable estoppel, and thus it is not directly on point. But, as noted above, the contract language in that case was very similar to the language in the Manual, and the Seventh Circuit's interpretation of that language is persuasive here.

[6] The court in *Myers* issued the decision cited above in response to an early motion for summary judgment, taken prior to the close of discovery. After discovery, the court re-affirmed its holding that the statement in the employee manual was sufficient to satisfy the misrepresentation prong of the equitable estoppel test. *Myers*, 2008 WL 474201, at * 14-15 (N.D. Iowa Feb. 19, 2008).

29 C.F.R. § 825.300(a)(4) – advises employees that they "are eligible" to apply for FMLA benefits only "if [among other things] at least 50 employees are employed by the employer within 75 miles." *See* United States Department of Labor, Wage and Hour Division, WHD Publication 1420 (Revised February 2013), *available at* http://www.dol.gov/whd/regs/compliance/posters/fmlaen.pdf. The Road Commission cannot invoke the regulations to defeat Tilley's equitable estoppel claim.

The Road Commission also argues that the unpublished decision in *Goode v. Heritage Hospice, Inc.*, 2012 WL 1038669 (E.D. Ky. Mar. 26, 2012), demonstrates that, as a matter of law, the statements in the Manual are insufficient to satisfy the misrepresentation element of Tilley's estoppel claim. *Goode* is easily distinguishable. In that case, the district court held that provisions in an employee handbook that "cite[d] the FMLA and explain[ed the employer's] procedures and requirements for an employee to obtain family or medical leave" did not constitute a misrepresentation sufficient to invoke equitable estoppel. *Id.* at *4. However, in sharp contrast to the Manual, the handbook in *Goode* did "*not* state . . . that Goode and employees similarly situated are FMLA eligible employees." *Id.* (emphasis added). *Goode* stands for the common sense proposition that an employer's general explanation of its FMLA policies and procedures, without more, does not amount to a definite representation that all (or any particular) employees are eligible for FMLA leave.

Second, Tilley presented evidence that he reasonably relied on the statement in the Manual that full-time employees like himself were covered under the FMLA. In the district court, Tilley submitted a sworn affidavit in which he said the following about the Manual and his reliance on it:

> I was aware that the Kalamazoo County Road Commission had a FMLA policy, and I had read the policy, and I had a copy of it, as part of the Personnel Manual, in my home. I assumed I would be able to get a leave under the FMLA for my illness beginning on August 1, 2011. Had I known that I was not entitled to FMLA, I would have had someone drive me to the Road Commission to complete the brief finishing touches to the #3 job classification memo despite my illness in order to abide by the deadline or make other arrangements to have the completed document delivered before the deadline. I would not have done anything to put my job in jeopardy.

***

> I relied on the FMLA policy in taking a leave on August 1, 2011. I believed, as a result of it . . . that I was eligible for leave under the FMLA and that I would not have to complete the #3 job classification by the end of the day on August 1, 2011.

Our decision in *Dobrowski* makes clear that Tilley's affidavit is sufficient to create a material factual dispute on the reliance element of his equitable estoppel claim. In *Dobrowski*, we indicated that the employee's equitable estoppel claim could have survived summary judgment if, among other things, the employee had been "able to point to some action or statement that indicated that his decision [to seek medical treatment] was contingent on his understanding of his FMLA status." *Dobrowski*, 571 F.3d at 557-58. We then stressed that "[a]t the very least," the employee "could have placed an affidavit in the record stating that he would have foregone [his medical procedure] but for his belief that his job status was protected by the FMLA." *Id.* at 558. Tilley did precisely what the employee in *Dobrowski* failed to do: he pointed to evidence – his sworn affidavit – that he sought medical treatment prior to completing his assignment *because the unqualified and unambiguous statements in the Manual led him to believe that he was covered under the FMLA*. On this record, there is a material factual dispute on the reasonable reliance element of Tilley's equitable estoppel claim.

The Road Commission urges us to reject Tilley's statement that he sought treatment for his suspected heart attack because he believed he was covered under the FMLA. The Road Commission finds this statement to be wholly incredible. In its words: "Tilley would have the Court believe that in the face of a life threatening medical emergency he consciously considered the FMLA handbook language that morning, relied on it before asking a coworker to take him to the emergency room, and would have stayed at work and risked death had there not been FMLA language in the handbook." (Road Commission's Br. at 52.) The Road Commission's attack on Tilley's statement is certainly a fair one. There are obvious reasons to doubt the veracity of Tilley's assertion that in the face of a suspected heart attack he would have remained at work to complete the then-due assignment. But Tilley swears under oath that but for his reliance on the statements in the Manual, he would have stayed on the job for the short time necessary to complete the "brief finishing touches" remaining on the draft of the job description. The ultimate question of Tilley's credibility is for the jury. *See, e.g., Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

And we are unwilling to conclude as a matter of law that Tilley was unreasonable in relying on the Manual's statement that employees in his position were eligible to apply for FMLA benefits. Simply put, a reasonable person in Tilley's position could fairly have believed that he was protected by the FMLA. Indeed, the Road Commission, itself, reviewed Tilley's circumstances, concluded that he *was* eligible, and twice communicated that conclusion to Tilley. The Road Commission is thus in no position to argue that Tilley acted unreasonably in reaching the same conclusion.[7]

Third, Tilley has presented evidence that he suffered a detriment as a result of his reliance on the statements in the Manual. Tilley has shown that he was fired, in part, because he missed the August 1st deadline for submission of the completed job description – a deadline Tilley says he could have and would have satisfied but for his reliance on the Manual. Tilley's job loss is a sufficient detriment to satisfy the detriment element of his equitable estoppel claim.

In sum, Tilley presented sufficient evidence to create a material factual dispute on his claim that the Road Commission was equitably estopped from denying that he was covered under the FMLA. Thus, the district court should not have granted summary judgment in favor of the Road Commission. Because the district court granted summary judgment on the basis that Tilley was not an "eligible employee," it did not address the other bases on which the Road Commission sought summary judgment on Tilley's FMLA interference and retaliation claims. The parties ask us to address the additional arguments raised in the Road Commission's summary judgment motion, but we decline to do so. The district court should address those arguments in the first instance. *See, e.g., Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 825 (6th Cir. 2005) ("Because the district court did not address either of these claims, we leave it to the district court in the first instance to consider them. . . .") We express no opinion as

---

[7]The Road Commission's statements that Tilley was eligible for FMLA benefits were made *after* Tilley began his leave. Thus, Tilley could not have relied on those statements to his detriment when he decided to seek medical care instead of completing the job description assignment on August 1. The Road Commission's statements are nonetheless relevant in that they illustrate the reasonableness of Tilley's conclusion that he was eligible.

to whether the Road Commission may be entitled to summary judgment on Tilley's FMLA claims on some ground other than Tilley's lack of eligibility to apply for such benefits.

**V.**

For all of the reasons discussed above, we **AFFIRM** the district court's grant of summary judgment to the Road Commission on Tilley's age-discrimination claim under the ELCRA.  We **REVERSE** summary judgment in favor of the Road Commission on Tilley's claims under the FMLA.  We **REMAND** for further proceedings consistent with this Opinion.